# **EXHIBIT A**

**Modified Plan Administrator Agreement**

# PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (the "Agreement")[1] is made this [●] day of September, 2025, by and among Marin Software Incorporated (the "Debtor") and Armanino Advisory LLC, as the Plan Administrator appointed under the terms of (i) the *Second Amended Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code* [Docket No. 111] (as amended and confirmed, the "Plan"), (ii) the *Order Confirming Second Amended Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "Confirmation Order"), and (iii) this Agreement (the "Plan Administrator").

## RECITALS

WHEREAS, on July 1, 2025, the Debtor filed a voluntary chapter 11 petition with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on [●], 2025, the Bankruptcy Court entered the Confirmation Order;

WHEREAS, pursuant to the terms of the Plan and the Confirmation Order, the Plan Administrator is charged with overseeing the tasks outlined in the Plan;

WHEREAS, pursuant to the terms of the Plan, the Plan Administrator will have full authority, duty, and responsibility to: (1) liquidate the Excluded Assets and effect all actions and execute all agreements, instruments and other documents necessary to implement the applicable provisions of the Plan; (2) access and utilize the Available Cash and Plan Consideration and make all Distributions to Creditors and Holders of Interests in accordance with the Plan; (3) establish and administer any necessary reserves for Disputed Claims that may be required; (4) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (5) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtor; and (6) take all other administrative actions on behalf of the Debtor, including, without limitation, the filing of any requisite tax returns and post-confirmation filings with the Bankruptcy Court relating to the Debtor; and

WHEREAS, on [●], 2025, the Plan became effective by its terms (the "Effective Date").

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the mutual agreements of the parties contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

---

[1] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Confirmation Order (each as defined below), as applicable.

# ARTICLE I
# THE PLAN ADMINISTRATOR

**1.1    Appointment.** The Plan Administrator has been approved pursuant to the Confirmation Order and has been appointed as of the Effective Date. The Plan Administrator's appointment shall continue until the earlier of (a) the termination of this Agreement or (b) the Plan Administrator's resignation, death, disability, dissolution, or removal. To effectuate an orderly and efficient transition of the administration of the Excluded Assets, Available Cash, and Plan Consideration from the Debtor to the Plan Administrator, the Plan Administrator may perform certain services in connection with its duties and obligations under this Agreement prior to the Effective Date, and the authorization for such performance is ratified by the execution hereof to the extent not already authorized by the Plan or Confirmation Order.

**1.2    General Powers.** The Plan Administrator shall have all duties, obligations, rights, and benefits assumed by, assigned to, or vested in the Debtor under the Plan, the Confirmation Order, this Agreement, and any other agreement entered into pursuant to or in connection with the Plan. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator may control and exercise authority over the Excluded Assets, Available Cash, and Plan Consideration and over the acquisition, management, and disposition thereof. No Person dealing with the Plan Administrator shall be obligated to inquire into the Plan Administrator's authority in connection with the acquisition, management, or disposition of the Excluded Assets, Available Cash, and Plan Consideration. The Plan Administrator shall make timely distributions in accordance with the Plan and shall not unduly prolong the administration of the Excluded Assets, Available Cash, and Plan Consideration. Without limiting the generality of the foregoing, the Plan Administrator shall be expressly authorized to hold, invest, expend, and distribute the Excluded Assets, Available Cash, and Plan Consideration, subject to any limitations set forth herein, in the Plan, or in the Confirmation Order. In addition to the rights, powers, and responsibilities set forth in Section 14.3 of the Plan, subject to any limitations set forth in the Plan, the Confirmation Order, or this Agreement, the Plan Administrator shall have the following powers and responsibilities:

(a)    exercise all power and authority that may be or could have been exercised, commence any and all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken with respect to the Excluded Assets, Available Cash, and Plan Consideration, by any officer, director, shareholder, or other party acting in the name of the Debtor or its estate with like effect as if duly authorized, exercised, and taken by action of such officers, directors, shareholders, or other Person;

(b)    open and maintain bank accounts and designate additional authorized signers on bank accounts as may be necessary, calculate and make distributions, and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves;

(c)    receive, manage, invest, supervise, and protect the Excluded Assets, Available Cash, and Plan Consideration;

(d) establish the Disputed Claims Reserve in accordance with Section 12.6 of the Plan;

(e) review and, where appropriate, object to Claims payable pursuant to the Plan or the Bankruptcy Code, and litigate such objections to resolution, and supervise and administer the resolution, any settlement, and payment of Allowed Claims payable pursuant to the Plan or the Bankruptcy Code (collectively, the "Claims Resolution Process") and the Distribution to holders of Allowed Claims and Interests;

(f) make Distributions to the holders of Allowed Claims and Interests and other payments, in each case as provided for, or contemplated by the Plan, the Confirmation Order, or this Agreement;

(g) withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Plan Administrator has determined, in its reasonable discretion, may be required to be withheld therefrom under the income tax laws of the United States, any foreign country, or of any state, local, or political subdivision thereof;

(h) enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement and perform all obligations thereunder;

(i) purchase and carry all insurance policies and pay all insurance premiums and costs it deems reasonably necessary or advisable;

(j) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and Distribution of the Excluded Assets, Available Cash, and Plan Consideration in accordance with the Plan and Confirmation Order;

(k) winddown the Non-Debtor Subsidiaries in accordance with Section 14.9 of the Plan;

(l) implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Agreement relating to the Excluded Assets, Available Cash, and Plan Consideration; and

(m) take all other actions consistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable to administer the Excluded Assets, Available Cash, and Plan Consideration in accordance with the Plan, the Confirmation Order, this Agreement, and applicable law.

**1.3    Compensation of Plan Administrator and Its Professionals and Third Parties.**

(a) The Plan Administrator shall receive fair and reasonable compensation, and reimbursement of its reasonable, documented expenses, which initial compensation and reimbursement shall be a charge against the Excluded Assets, Available Cash, and Plan Consideration and shall be paid in accordance with the Plan and Confirmation Order.

(b) The Plan Administrator will be compensated on an hourly basis, based on the actual amount of time required to provide the services described herein and the Plan Administrator's standard hourly rates. The Plan Administrator's current hourly rates are:

| Representative | Rate |
|---|---|
| Partners | $495–$695 |
| Senior or Managing Directors | $440–$595 |
| Directors | $390–$495 |
| Managers | $250–$395 |
| Consultants and Staff | $195–$275 |

(c) Any successor Plan Administrator shall also be entitled to reasonable compensation in connection with the performance of its duties, which compensation may be different from the terms provided herein. Any change to the Plan Administrator's compensation may occur no more than once *per annum* and shall be filed in the Chapter 11 Case.

(d) The Plan Administrator, without Bankruptcy Court approval, shall be entitled to employ and pay third parties to assist the Plan Administrator in carrying out its responsibilities or exercising its rights. To the extent that the Plan Administrator employs any Person who would be a Professional if employed by the Debtor in the Chapter 11 Case before the Effective Date, the Plan Administrator shall be entitled to pay such Person reasonable compensation and reimburse such Person for reasonable, documented expenses. In the event that a dispute arises between the parties regarding payment of any such compensation or expense reimbursement, the Person seeking payment may file a motion for such payment with the Bankruptcy Court, providing notice to the Plan Administrator and any legal counsel the Plan Administrator may employ.

(e) All fees, expenses, and disbursements of the Plan Administrator shall be paid out of the Excluded Assets, Available Cash, and Plan Consideration without the requirement that the Plan Administrator seek or obtain approval of the Bankruptcy Court for any such payments or amounts; *provided*, *however*, that no less frequently than on a quarterly basis, an accounting of all fees, expenses, and disbursements made by the Plan Administrator shall be disclosed in any quarterly operating report filed by the Plan Administrator.

**1.4** **Replacement of the Plan Administrator.** The Plan Administrator may resign at any time upon thirty (30) days' prior written notice filed with Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, unless: (i) the Insurance Coverages (as defined below) terminate for any reason other than the Plan Administrator's unreasonable refusal to renew such Insurance Coverages; or (ii) the Plan Administrator determines in its reasonable judgment that it lacks sufficient assets and financial resources to complete the duties and powers assigned to the Plan Administrator under the Plan, the Confirmation Order, or this Agreement, in which case such resignation may become effective without appointment of a successor Plan Administrator. The Plan Administrator may be removed by the Bankruptcy Court for cause, upon motion and after notice and a hearing, which motion may be brought by any holder of Allowed Claims or Interests. In the event of the resignation, death, Disability (as defined below), dissolution, or removal of the Plan Administrator, the Reorganized Debtor shall select a successor Plan Administrator (or, if a

replacement is not promptly appointed within thirty (30) days after a triggering event, the Bankruptcy Court may appoint a replacement *sua sponte* or upon motion of any holders of Allowed Claims or Interests). Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor, and all responsibilities of the predecessor Plan Administrator arising under the Plan shall be terminated; *provided, however*, that the original Plan Administrator's right to indemnification shall survive termination. In the event the Plan Administrator's appointment terminates by reason of termination with cause, death, or Disability, then the Reorganized Debtor may elect, upon written notice delivered to the Bankruptcy Court, to have such termination immediately effective. For purposes hereof, the term "Disability" shall mean incapacity resulting in the inability to perform services for two consecutive months or in the aggregate of seventy-five (75) days during any twelve-month period. Amounts owed to the original Plan Administrator, on the one hand, and any successor Plan Administrator, on the other, shall be allocated between them to reflect their respective periods of service and the services provided; *provided*, *however*, that the original Plan Administrator shall be compensated for all reasonable fees and expenses accrued through the effective date of its termination. In the event of the removal or resignation of any Plan Administrator with cause, such Plan Administrator shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of its termination, whether or not previously invoiced, except to the extent otherwise ordered by the Bankruptcy Court due to a termination with cause.

**1.5    Agreement Continuance.** The death, Disability, dissolution, resignation, or removal of the Plan Administrator shall not terminate this Agreement or revoke any existing agency created by the Plan Administrator pursuant to this Agreement or invalidate any action theretofore taken by the Plan Administrator, and the successor Plan Administrator agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Administrator, all of its successors or assigns, and the holders of Allowed Claims and Interests.

**1.6    Incorporation of the Plan.** The Plan is hereby incorporated into this Agreement and made a part hereof by this reference; *provided*, *however*, to the extent that there is a conflict between the provisions of this Agreement and either the Plan or the Confirmation Order, then the Plan or the Confirmation Order (as applicable) shall govern.

**1.7    Relationship.** This Agreement is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, or as part of a principal and agent relationship, nor shall the Plan Administrator or the holders of Allowed Claims and Interests, or any of them, for any purpose be, or be deemed to be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.

**1.8    Appointment as Estate Representative.** Upon the Effective Date, the Plan Administrator is appointed as the duly authorized representative of the Debtor and its estate in accordance with section 1123 of the Bankruptcy Code with respect to the Excluded Assets, Available Cash, and Plan Consideration and for all other purposes of implementing the Plan in accordance with the Plan, the Confirmation Order, and this Agreement. The Plan Administrator shall be a party-in-interest for all purposes under the Chapter 11 Case within the meaning of section 1109(b) of the Bankruptcy Code.

## ARTICLE II
## LIABILITY OF PLAN ADMINISTRATOR

**2.1    Standard of Care; Exculpation.** Neither the Plan Administrator nor any director, officer, member, affiliate, employee, employer, professional, agent, or representative of the Plan Administrator (collectively, the "Plan Administrator Parties") shall be liable for losses, claims, damages, liabilities, or expenses in connection with the affairs or property of the Reorganized Debtor or the Excluded Assets, Available Cash, and Plan Consideration to any holder of Allowed Claims or Interests under the Plan, or any other Person, for the acts or omissions of the Plan Administrator Parties under this Agreement, the Plan, or the Confirmation Order; *provided, however*, that the foregoing limitation shall not apply as to any losses, claims, damages, liabilities, or expenses suffered or incurred by any holder of Allowed Claims or Interests that are found by a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of any of the Plan Administrator Parties. Every act done, power exercised, or obligation assumed by the Plan Administrator Parties pursuant to this Agreement, the Plan, or the Confirmation Order shall be held to be done, exercised, or assumed, as the case may be, by the Plan Administrator Parties acting for and on behalf of the Plan Administrator and not otherwise; *provided, however*, that none of the Plan Administrator Parties shall be deemed to be responsible for any other such Plan Administrator Parties' actions or inactions outside of the scope of the authority provided by or to the Plan Administrator. Except as provided in the proviso of the first sentence of this section, every holder of Allowed Claims or Interests, Person, firm, corporation, or other Entity contracting or otherwise dealing with or having any relationship with the Plan Administrator, and any director, officer, member, affiliate, employee, employer, professional, agent, or representative of the Plan Administrator, shall have recourse only to the Excluded Assets, Available Cash, and Plan Consideration for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships, and the Plan Administrator Parties shall not be individually liable therefor. For the avoidance of doubt, except as provided in the proviso of the first sentence of this section, neither the Plan Administrator, in its capacity as such, nor any of the Plan Administrator Parties, in their respective capacities, shall have any liability whatsoever to any party for the liabilities or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtor or the Reorganized Debtor.

**2.2    Limitation of Liability.**

(a)    Satisfaction of any obligation arising pursuant to the terms of this Article II shall be payable only from the Excluded Assets, Available Cash, and Plan Consideration and may be advanced prior to the conclusion of such matter, and such right to payment shall be prior and superior to any other rights to receive a Distribution of the Excluded Assets, Available Cash, and Plan Consideration; *provided, however*, this subsection shall not apply to any such loss, claim, damage, liability, or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to be a liability for which recourse is not limited pursuant to Section 2.1 above. Notwithstanding any of the provisions herein, the Reorganized Debtor shall not be liable for (i) any Plan Administrator Party's acts or omissions under this Agreement, the Combined Disclosure Statement and Plan, or the Confirmation Order, or (ii) for any Plan Administrator Party's actions found by a final judgment by a court of competent jurisdiction (not

subject to further appeal) to have resulted primarily and directly from any such party's fraud, gross negligence, or willful misconduct..

(b) The Plan Administrator shall be permitted to pay from the Excluded Assets, Available Cash, and Plan Consideration expenses reasonably incurred by any Plan Administrator Party in defending, participating in, or settling any action, proceeding, or investigation in which such Plan Administrator Party is a party or is threatened to be made a party or otherwise is participating in connection with the Agreement or the duties, acts, or omissions of the Plan Administrator, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.

(c) Each Plan Administrator Party shall, and by its acceptance of the rights hereunder hereby undertakes to, repay any and all amounts advanced pursuant to Section 2.2(b) above if it shall ultimately be determined by a court of competent jurisdiction that such losses, claims, damages, liabilities, or expenses resulted primarily and directly from such Party Administrator Party's fraud, gross negligence, or willful misconduct.

**2.3    No Liability for Acts of Successor / Predecessor Plan Administrators.** Upon the appointment of a successor Plan Administrator and the delivery of the then remaining Excluded Assets, Available Cash, and Plan Consideration to the successor Plan Administrator, the predecessor Plan Administrator and any director, officer, member, affiliate, employee, employer, professional, agent, or representative of the predecessor Plan Administrator shall have no further liability or responsibility with respect thereto (other than liabilities arising prior to the cessation of its role as Plan Administrator). A successor Plan Administrator shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor, and no successor Plan Administrator shall be in any way liable for the acts or omissions of any predecessor Plan Administrator, unless a successor Plan Administrator expressly assumes such responsibility. A predecessor Plan Administrator shall have no liability for the acts or omissions of any immediate or subsequent successor Plan Administrator for any events or occurrences subsequent to the cessation of its role as Plan Administrator.

**2.4    Reliance by Plan Administrator on Documents or Advice of Counsel.** Except as otherwise provided in this Agreement, the Plan Administrator and any director, officer, member, affiliate, employee, employer, professional, agent, or representative of the Plan Administrator may rely, and shall be protected from liability for acting, on any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Plan Administrator to be genuine and to have been presented by an authorized party.

**2.5    Insurance.** The Plan Administrator may obtain commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations set forth herein or may be added to the Reorganized Debtor's existing insurance policies (the "<u>Insurance Coverages</u>").

**2.6    Survival.** The provisions of this Article II shall survive the termination of this Agreement and the resignation, death, dissolution, removal, liquidation, or replacement of the Plan Administrator.

## ARTICLE III
## GENERAL PROVISIONS CONCERNING ADMINISTRATION

**3.1** **Register of Holders of Allowed Claims and Interests.** The Plan Administrator shall maintain at all times a register of the holders of Allowed Claims and Interests' names, mailing addresses, and amounts of their respective outstanding Allowed Claims, which may also be the official claims register (the "Register"). The Register shall be limited to those holders of Allowed Claims and Interests who are determined by the Plan Administrator as of the Effective Date to be entitled to Distributions under the Plan The Plan Administrator shall cause the Register to be kept at its office or at such other place or places as may be designated by the Plan Administrator from time to time. The initial Register shall be delivered to the Plan Administrator by the Debtor and shall be based on the best available information at the time of the Effective Date and prepared in accordance with the provisions of the Plan and the Confirmation Order. All references in this Agreement to holders of Allowed Claims and Interests shall be read to mean holders of record as set forth in the Register maintained by the Plan Administrator and shall exclude any party not recorded on such Register.

**3.2** **Books and Records.** Subject to the terms of the Plan, the Plan Administrator shall maintain books and records relating to the Excluded Assets, Available Cash, and Plan Consideration and any income and expenses associated therewith, in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. The Plan Administrator may maintain such books and records through its retained professionals.

**3.3** **Interim Reports.** The Plan Administrator shall file with the Bankruptcy Court a report regarding the administration of the Excluded Assets, Available Cash, and Plan Consideration on a quarterly basis within thirty (30) days after the conclusion of each calendar quarter following the Effective Date, which may also be in the form of quarterly operating reports filed with the Bankruptcy Court as required by the Office of the United States Trustee.

**3.4** **Segregation of Disputed Claims Reserve(s).** The Plan Administrator shall segregate and account separately for each of the Disputed Claims Reserve(s) and such other remaining reserves or escrowed amounts as may be required under the Plan. Any tax liability associated with any of the Excluded Assets, Available Cash, and Plan Consideration shall be attributed and allocated to, and satisfied from, the specific Excluded Assets, Available Cash, and Plan Consideration giving rise to such tax liability.

**3.5** **Right to Seek Bankruptcy Court Approval.** The Plan Administrator shall have the right to seek Bankruptcy Court approval or direction with respect to any matter relating to the administration of the Excluded Assets, Available Cash, and Plan Consideration or the performance of its duties and responsibilities under the Plan, the Confirmation Order, or this Agreement, even if such approval is not required by the Plan, the Confirmation Order, or this Agreement.

# ARTICLE IV
# HOLDERS OF ALLOWED CLAIMS AND INTERESTS

**4.1   Change of Address.** A holder of Allowed Claims or Interests may, after the Effective Date, select an alternative mailing address by notifying the Plan Administrator in writing of such alternative Distribution Address. Absent such notice, the Plan Administrator shall not recognize any such change of address. Such notification shall be effective only upon actual receipt by the Plan Administrator.

**4.2   Effect of Death, Dissolution, Incapacity, or Bankruptcy of Holders of Allowed Claims and Interests.** The death, dissolution, incapacity, or bankruptcy of a holder of Allowed Claims or Interests shall not entitle the representative or creditors of the deceased, dissolved, incapacitated, or bankrupt holder of Allowed Claims or Interests to an accounting or to take any action in any court or elsewhere for the distribution of any Excluded Assets, Available Cash, and Plan Consideration or for a partition thereof, nor shall it otherwise affect the rights and obligations of the holder of Allowed Claims or Interests under this Agreement.

**4.3   Standing.** Except as expressly provided in this Agreement, the Plan, or the Confirmation Order, a holder of Allowed Claims or Interests does not have standing to institute any action or proceeding at law or in equity against any party with respect to the Excluded Assets, Available Cash, and Plan Consideration (other than against the Plan Administrator to the extent provided in this Agreement) or to direct the Plan Administrator to do so or not to do so.

# ARTICLE V
# DISTRIBUTIONS

**5.1   Plan Provisions.** All payments to be made by the Plan Administrator on account of obligations under the Plan shall be made only in accordance with the Plan, the Confirmation Order, and this Agreement, including as to Unclaimed Distributions and any Distributions that have been returned as undeliverable or for which the Plan Administrator has been unable to effect Distribution after reasonable effort, and all limitations in the Plan or Confirmation Order as to minimum Distributions shall be applicable.

# ARTICLE VI
# TAXES

**6.1   Compliance with Tax Laws**. As set forth in the Plan, in connection with the Plan and all Distributions thereunder, to the extent applicable, the Plan Administrator is authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements.

**6.2   Withholding and Reporting Requirements**. The Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding the foregoing, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the

satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution. The Plan Administrator has the right, but not the obligation, to withhold a Distribution until such Holder has made arrangements satisfactory to the Plan Administrator for payment of any such tax obligations. The Plan Administrator may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim complete and return a Form W-8, a Form W-9, or a similar tax form, as applicable, to each such Holder. If the Plan Administrator makes such a request in writing by certified U.S. mail, and the Holder fails to comply before the date that is ninety (90) days after the receipt of such request, such Holder shall be deemed to have forfeited its rights to all Distributions, the amount of such forfeited Distributions shall irrevocably revert to the Debtor, and any Claim in respect of such Distribution shall be discharged, disallowed, and forever barred from assertion against the Plan Administrator or the Excluded Assets, Available Cash, and Plan Consideration.

**6.3    Treatment of Disputed Claims Reserves.** The Plan Administrator may elect to treat the reserve established under the Plan (the "<u>Disputed Claims Reserve</u>") as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9 for U.S. federal income tax purposes by timely making an election and by filing all U.S. federal income tax returns with respect to any income attributable to the Disputed Claims Reserves consistent with such treatment, in which event the Plan Administrator shall pay the U.S. federal, state, and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit, or loss allocable thereto. All holders of Allowed Claims and Interests shall report, for U.S. federal income tax purposes, consistent with the foregoing. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Plan Administrator as a result of the resolution of such Disputed Claims.

## ARTICLE VII
## TERMINATION OF AGREEMENT

**7.1    Termination of Agreement.** This Agreement shall automatically terminate and the Plan Administrator shall be discharged at such time as: (A) (i) all of the Excluded Assets, Available Cash, and Plan Consideration have been liquidated or abandoned, (ii) all duties and obligations of the Plan Administrator hereunder have been fulfilled, including the winddown of the Non-Debtor Subsidiaries, (iii) all Distributions required to be made by the Plan Administrator under the Plan and this Agreement have been made, and (iv) the Chapter 11 Case of the Debtor has been closed; or (B) the Plan Administrator completes the winddown of the Non-Debtor Subsidiaries and determines in its reasonable judgment that the Excluded Assets, Available Cash, and Plan Consideration are insufficient in amount to complete the remaining duties and powers assigned to it under the Plan, the Confirmation Order, and this Agreement.

**7.2    Winding Up and Discharge of the Plan Administrator.** Upon a motion by the Plan Administrator, the Bankruptcy Court may enter an order relieving the Plan Administrator of

any further duties and discharging the Plan Administrator and its attorneys, financial advisors, agents, representatives, and employees.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

**8.1** **Amendments.** The Plan Administrator may modify, supplement, or amend this Agreement, but only to clarify any ambiguity or inconsistency or to render the Agreement in compliance with its stated purposes, and only if such amendment does not materially and adversely affect the interests, rights, treatment, or distributions of the Plan Sponsor, DIP Lender, Reorganized Debtor, or any holder of Allowed Claims or Interests. The Plan Administrator, with the approval of the Bankruptcy Court, may modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order.

**8.2** **Waiver.** No failure by the Plan Administrator to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**8.3** **Cumulative Rights and Remedies.** The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

**8.4** **No Bond Required.** Notwithstanding any state law to the contrary, the Plan Administrator (including any successor Plan Administrator) shall be exempt from giving any bond or other security in any jurisdiction.

**8.5** **Relationship to the Plan.** The principal purpose of this Agreement is to aid in the implementation of the Plan. Therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.

**8.6** **Applicable Law.** This Agreement and the rights and obligations of the Plan Administrator shall be governed by, and construed and administered according to, the laws of the State of Delaware and the Bankruptcy Code; *provided, however*, that, except as expressly provided in this Agreement, there shall not be applicable: (a) the provisions of Section 3540 of Title 12 of the Delaware Code, or (b) any provisions of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate (i) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges; (ii) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust; (iii) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (iv) fees or other sums payable to trustees, officers, agents, or employees of a trust; (v) the allocation of receipts and expenditures to income or principal; (vi) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; or (vii) the establishment of fiduciary or other standards, responsibilities, or limitations on

the acts or powers of trustees, which are inconsistent with the limitations, liabilities, authorities, and powers of the Plan Administrator set forth or referenced in this Agreement.

**8.7** **Retention of Jurisdiction.** Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain jurisdiction after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection with this Agreement or any entity's obligations incurred in connection herewith, including, without limitation, any action against the Plan Administrator or any Person retained by the Plan Administrator.

**8.8** **Severability.** In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court (or any other court of competent jurisdiction) to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

**8.9** **Limitation of Benefits.** Except as otherwise specifically provided in this Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer on or to give any person other than the parties hereto and the holders of Allowed Claims and Interests any rights or remedies under or by reason of this Agreement.

**8.10** **Notices.** All notices, requests, demands, consents, and other communication hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

*If to the Plan Administrator*:

Armanino Advisory LLC
Attn: Michael Hogan
2700 Camino Ramon, Suite 350
San Ramon, CA 94583
Telephone: (925) 790-2600
Email: Michael.Hogan@armanino.com
       LegalDepartment@armanino.com

*with copies to:*

PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Attn:   James E. O'Neill (joneill@pszjlaw.com)
        Debra I. Grassgreen (dgrassgreen@pszjlaw.com)
        Jason Rosell (jrosell@pszjlaw.com)

*If to the Reorganized Debtor:*

Marin Software Incorporated
c/o Kaxxa Holdings, Inc.
2028 E Ben White Blvd, Ste 240-2650
Austin, TX 78741
Attention:  Neeraj Gupta

*with copies to*:

Cozen O'Connor P.C.
3 WTC, 175 Greenwich Street, 56th Floor
New York, NY 10007
Attention: Trevor R. Hoffmann (thoffmann@cozen.com)
Telephone: (212) 453-3735

The parties may designate in writing from time to time other and additional places to which notices may be sent.

**8.11    Integration.** This Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by, and among the parties thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, and in the Confirmation Order. This Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto relating to any transaction contemplated hereunder.

**8.12    Interpretation.** The enumeration and Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words "herein," "hereby," and "hereunder," and words with similar import, refer to this Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise.

**8.13    Counterparts.** This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement or have caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

[SIGNATURE PAGES FOLLOW]

**THE DEBTOR**

**MARIN SOFTWARE INCORPORATED**


_____
Name: Robert Bertz
Title: Chief Financial Officer


**THE PLAN ADMINISTRATOR**

**ARMANINO ADVISORY LLC**


By: _____
Name: Michael Hogan
Title: Partner