**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MARIN SOFTWARE INCORPORATED,[1] | Case No. 25-11263 (LSS) |
| Debtor. | **Related Docket No. 111** |

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF AN ORDER**
**CONFIRMING THE SECOND AMENDED COMBINED DISCLOSURE STATEMENT**
**AND PLAN OF REORGANIZATION OF MARIN SOFTWARE INCORPORATED**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

[1]    The last four digits of the Debtor's federal tax identification number are 7180. The Debtor's address is 149 New Montgomery, 4th Floor, San Francisco, CA 94105.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................2

STATEMENT OF FACTS ....................................................................................................5

    A.    General Background .................................................................................5

    B.    Overview of the Plan ................................................................................8

MEMORANDUM OF LAW .................................................................................................9

I.    The Combined Disclosure Statement and Plan Complies with the Confirmation Standards Set Forth in Section 1129 of the Bankruptcy Code. ..........................................................10

    A.    The Combined Disclosure Statement and Plan Complies with the Applicable Provisions of Section 1129(a)(1) of the Bankruptcy Code. ...................................10

        1.    The Combined Disclosure Statement and Plan Complies with the Requirements of Section 1122 of the Bankruptcy Code..........................11

        2.    The Combined Disclosure Statement and Plan Complies with the Requirements of Section 1123(a) of the Bankruptcy Code. .....................12

        3.    The Plan Incorporates Certain Permissible Provisions Consistent with Bankruptcy Code Section 1123(b)...........................................................16

        4.    The Combined Disclosure Statement and Plan Complies with Section 1123(d) of the Bankruptcy Code..............................................................17

    B.    The Debtor has Complied with Section 1129(a)(2) of the Bankruptcy Code........18

        1.    The Debtor Has Complied with Section 1125 of the Bankruptcy Code....18

        2.    The Debtor Has Complied with Section 1126 of the Bankruptcy Code....20

    C.    The Combined Disclosure Statement and Plan Has Been Proposed in Good Faith and Complies with Section 1129(a)(3) of the Bankruptcy Code .........................23

    D.    The Combined Disclosure Statement and Plan Provides for Bankruptcy Court Approval of Certain Administrative Expenses Pursuant to Section 1129(a)(4) of the Bankruptcy Code...........................................................................24

    E.    The Combined Disclosure Statement and Plan Provides All Necessary Information Regarding Individuals Who Will Hold Post-Confirmation Positions Pursuant to Section 1129(a)(5) of the Bankruptcy Code ......................................25

    F.    No Governmental Regulatory Commission Has Jurisdiction Over the Debtor Pursuant to Section 1129(a)(6) of the Bankruptcy Code ......................................26

G.      Section 1129(a)(7) of the Bankruptcy Code Is Inapplicable ................................26

H.      The Plan Has Been Accepted by All Classes of Claims and Interests Pursuant to
        Section 1129(a)(8) of the Bankruptcy Code ........................................................27

I.      The Plan Provides for the Statutorily Mandated Treatment of Administrative and
        Priority Tax Claims Under Section 1129(a)(9) of the Bankruptcy Code .............27

J.      Section 1129(a)(10) of the Bankruptcy Code Is Inapplicable ..............................27

K.      The Combined Disclosure Statement and Plan is Feasible Pursuant to Section
        1129(a)(11) of the Bankruptcy Code ....................................................................28

L.      The Combined Disclosure Statement and Plan Provides for the Payment of All
        Fees Under 28 U.S.C. § 1930 Pursuant to Section 1129(a)(12) of the Bankruptcy
        Code ......................................................................................................................30

M.      Sections 1129(a)(13) Through 1129(a)(16) Do Not Apply to the Plan ................30

N.      Confirmation of the Plan Pursuant to Section 1129(b) of the Bankruptcy Code Is
        Not Needed ...........................................................................................................30

O.      The Combined Disclosure Statement and Plan is the Only Plan Currently on File
        (Bankruptcy Code Section 1129(c)) .....................................................................31

P.      The Principal Purpose of the Combined Disclosure Statement and Plan is Not the
        Avoidance of Taxes (Bankruptcy Code Section 1129(d)) ....................................31

II.     The Disclosure Statement Provides Adequate Information ................................................31

III.    The Assumption or Rejection of Executory Contracts and Unexpired Leases Under the
        Plan Should be Approved ..................................................................................................33

IV.     The Plan Releases, Exculpation, and Injunctions Are Appropriate and Consistent with
        Established Precedent ........................................................................................................34

A.      The Debtor Releases Should be Approved ...........................................................35

B.      Exculpation and Limitation of Liability ...............................................................37

C.      Injunction .............................................................................................................38

V.      Modifications of the Combined Disclosure Statement and Plan Do Not Adversely Change
        the Treatment of Any Creditor or Equity Interest Holder .................................................38

VI.     Waiver of Any Stay of the Confirmation is Appropriate ..................................................39

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Court N.Y., N.Y.*
    *(In re Chateaugay Corp.),*
    89 F.3d 942 (2d Cir. 1996) ........................................................................ 11

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,*
    526 U.S. 434 (1999) .................................................................................. 26

*Clarkson v. Cooke Sales & Servs. Co.*
    *(In re Clarkson),*
    767 F.2d 417 (8th Cir. 1985) ................................................................... 28

*Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II*
    *(In re Briscoe Enters., Ltd. II),*
    994 F.2d 1160 (5th Cir. 1993) ................................................................. 28

*In re Am. Capital Equip., LLC,*
    688 F.3d 145, (3d Cir. 2012) ................................................................... 28

*In re Autobacs Strauss, Inc.,*
    473 B.R. 525 (Bankr. D. Del. 2012) ....................................................... 32

*In re BSA,*
    137 F.4th 126 (3d Cir. 2025) ................................................................... 23

*In re Burns & Roe Enters., Inc.,*
    Case No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) .................. 39

*In re Coram Healthcare Corp.,*
    315 B.R. 321 (Bankr. D. Del. 2004) ....................................................... 35

*In re Diocese of Camden,*
    653 B.R. 309 (Bankr. D. N.J. 2023) ........................................................ 11

*In re Drexel Burnham Lambert Grp., Inc.,*
    138 B.R. 723 (Bankr. S.D.N.Y. 1992) .................................................... 28

*In re Ferretti,*
    128 B.R. 16 (Bankr. D.N.H. 1991) ......................................................... 32

*In re Global Safety Textiles Holdings LLC,*
    Case No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) .......... 39

*In re J T Thorpe Co.*
    308 B.R. 782 (Bankr. S.D. Tex. 2003) ................................................... 10

*In re Jersey City Med. Ctr.*,
  817 F.2d 1055 (3d Cir. 1987)...........................................................................11

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986)..........................................................10, 18

*In re Kidde-Fenwal, Inc.*,
  No. , 2025 Bankr. LEXIS 1450, at *19 (Bankr. D. Del. June 16, 2025) ........................35

*In re Landing Assocs.*
  157 B.R. 791 (Bankr. W.D. Tex. 1993) ...........................................................25

*In re Master Mortgage Inv. Fund, Inc.*,
  168 B.R. 930 (Bankr. W.D. Mo. 1994).............................................................35

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000).................................................................23, 38

*In re Texaco, Inc.*,
  84 B.R. 893 (Bankr. S.D.N.Y. 1988).........................................................10, 28

*In re W.R. Grace & Co.*,
  475 B.R. 34 (D. Del. 2012).....................................................................28

*In re W.R. Grace & Co.*,
  729 F.3d 311, 326 (3d Cir. 2013) ..........................................................11, 28

*In re WorldCom, Inc.*,
  2003 Bankr. LEXIS 1401 (Bankr. S.D.N.Y. Oct. 31, 2003) .........................................18

*In re Zenith Elecs. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ..............................................................35

*Lisanti Foods, Inc. v. Lubetkin*
  *(In re Lisanti Foods, Inc.)*, |
  329 B.R. 491 (D.N.J. 2005) .....................................................................24

*MacArthur Co. v. Johns-Manville Corp.*
  *(In re Johns-Manville)*,
  837 F.2d 89 (2d Cir. 1988)......................................................................35

*Mercury Capital Corp. v. Milford Conn. Assocs., L.P.*,
  354 B.R. 1 (D. Conn. 2006).....................................................................28

*Resorts Int'l, Inc.*,
  145 B.R. 412 (Bankr. D.N.J. 1990) ..............................................................24

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
  81 F.3d 355 (3d Cir. 1996)......................................................................32

*Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*,
  872 F.2d 36 (3d Cir. 1989)......................................................................33

*Solow v. PPI Enters. (U.S.)*
    *(In re PPI Enters. (U.S.)),*
    324 F.3d 197 (3d Cir. 2003) ............................................................................................ 20

*U.S. Nat'l Bank Assoc. v. Wilmington Trust Co.*
    *(In re Spansion, Inc.),*
    426 B.R. 114 (Bankr. D. Del. 2010) ............................................................................... 36

## **STATUTES**

11 U.S.C §1125 .................................................................................................... passim

11 U.S.C. §1122 .................................................................................................. passim

11 U.S.C. §1123 .................................................................................................. passim

11 U.S.C. §1129 .................................................................................................. passim

28 U.S.C. § 1334 ........................................................................................................ 10

28 U.S.C. § 1408 ........................................................................................................ 10

28 U.S.C. § 1409 ........................................................................................................ 10

28 U.S.C. § 157 ......................................................................................................... 10

## **OTHER AUTHORITIES**

7 Collier on Bankruptcy ¶ 1129.02[2] (16th ed. 2018) .................................................. 18

H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368 .................. 18

S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912 ...................... 18

The above-captioned debtor and debtor in possession (the "Debtor" or the "Company" or "Marin") in this chapter 11 case (the "Chapter 11 Case") submits this memorandum of law (this "Memorandum") in support of final approval of the adequacy of disclosures contained in the Combined Disclosure Statement and (as defined herein),[2] pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "Bankruptcy Code"), and confirmation of the Combined Disclosure Statement and Plan (as defined herein), pursuant to section 1129 of the Bankruptcy Code. The Debtor will file a proposed order confirming the Combined Plan and Disclosure Statement (the "Proposed Confirmation Order").

This Memorandum, confirmation of the Combined Disclosure Statement and Plan, and entry of the Proposed Confirmation Order, are supported by, *inter alia*:

(a) *Second Amended Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code* [Docket No. 111] (the disclosure statement portion thereof, the "Disclosure Statement" and the chapter 11 plan portion thereof, the "Plan," as may be modified and/or amended from, time to time, and collectively, the "Combined Disclosure Statement and Plan"), filed on August 25, 2025;

(b) *Order (I) Granting Conditional Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Hearing on (A) the Adequacy of the Disclosure Statement, (B) Confirmation of the Plan, and (C) the Assumption or Rejection of Executory Contracts and Cure Amounts, and Setting Deadlines Related Thereto; (III) Approving the Forms of Notices to Non-Voting Classes; and (IV) Granting Related Relief* [Docket No. 88] (the "Confirmation Procedures Order");

(c) *Supplement to First Amended Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code* [Docket No. 104] (the "Initial Plan Supplement")

(d) *Notice of Filing of Amended Supplement to Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code* [Docket No. 113] (the "Amended Plan Supplement" and together with the Initial Plan Supplement and any further

---

[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Combined Plan and Disclosure Statement.

amendments or supplements to the documents contained therein, the "Plan Supplement")

(e) the *Notice of (I) Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object to Thereto*, filed August 7, 2025 [Docket No. 100] (the "Assumption and Cure Notice");

(f) the *Declaration of Robert Bertz, Chief Financial Officer, in Support of Confirmation of the Second Amended Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code* (the "Bertz Declaration");

(g) Any testimony and other declarations that may be submitted at or in connection with the Combined Hearing on adequacy of the Disclosure Statement and confirmation of the Plan; and

(h) The affidavits or other proofs of service of notices with respect to the Combined Disclosure Statement and Plan, Confirmation Hearing, the Plan Supplement, and the Assumption and Cure Notice.

## PRELIMINARY STATEMENT

The Debtor filed this Chapter 11 Case to implement a comprehensive financial restructuring of the Debtor and effectuate the sale of substantially all assets of the Company to the Plan Sponsor. The Debtor's Combined Disclosure Statement and Plan presents a viable, advantageous, and uncontested way to accomplish this goal. The Combined Disclosure Statement and Plan will maintain the Debtors' business as a going-concern, allowing Marin's existing customers to continue utilizing its platform and services. It also leaves all Classes of Holders of Claims and Interests unimpaired resulting in payment of unsecured creditors in full and a distribution to shareholders. No objections to confirmation have been filed and no informal objections are pending. The Debtor therefore urges the Bankruptcy Court to approve and confirm the Combined Disclosure Statement and Plan.

In the months before the Chapter 11 Case, the board of directors of the Debtor (the "Board") determined that it was in the best interests of shareholders to approve a voluntary dissolution and liquidation of the Company pursuant to a *Plan of Liquidation and Dissolution of*

*Marin* (the "Plan of Dissolution") (but subject to the Company's ability to abandon or delay the Plan of Dissolution). In short, the Plan of Dissolution proposed to liquidate the Company's assets, settle the Company's liabilities, and provide a liquidating distribution to the Debtor's stockholders, which would in effect cancel all outstanding shares of capital stock of the Debtor as of the date the Company terminated its legal existence in accordance with section 278 of the Delaware General Corporation Law. On June 11, 2025, Marin held a special meeting of stockholders of Marin (the "Special Meeting") and a vote to approve the Dissolution pursuant to the Plan of Dissolution, but subject to Marin's ability to abandon or delay the Plan of Dissolution in accordance with the terms thereof. The proposal passed.[3]

One day after the Board approved the Plan of Dissolution, yet before the Special Meeting, an affiliate of the Plan Sponsor contacted Marin. The Debtor then engaged in discussions with the Plan Sponsor concerning the sale of the Company to be effectuated through a pre-negotiated chapter 11 plan of reorganization. These discussions ultimately resulted in a restructuring support agreement (the "RSA"), which has been approved by this Court,[4] that set forth principal terms of a comprehensive financial restructuring (the "Restructuring") of the Company.

The Combined Disclosure Statement and Plan effectuates this Restructuring. Through a payment of the Plan Consideration (totaling $5.5 million) to the Plan Administrator by the Plan

---

[3]    488,916 shares of common stock voted in favor of approving the Dissolution pursuant to the Plan of Dissolution, but subject to Marin's ability to abandon or delay the Plan of Dissolution in accordance with the terms thereof (the "Dissolution Proposal"). The number of shares that voted in favor of the Dissolution Proposal was greater than the number of shares that voted against or abstained on the Dissolution Proposal, and therefore, the one share of Series A Preferred Stock (the "Preferred Share") was entitled to vote together with the holders of the common stock, as a single class, on the matters presented. As a result, the total voting power at the Special Meeting represented 6,377,036 votes. A total of 3,775,059 votes were cast, in person or by proxy, representing 59.20% of the eligible votes, and a quorum was present. Specifically, 488,916 shares of common stock voted for the Dissolution Proposal and 95,137 shares of common stock voted against the Dissolution Proposal (2,488 shares of common stock abstained). Inclusive of the Preferred Share, 3,677,434 shares voted for the Dissolution Proposal and 95,137 shares voted against the Dissolution Proposal. Accordingly, the Dissolution Proposal was approved.

[4]    *See Order Authorizing the Debtor's Assumption of the Restructuring Support Agreement* [Docket No. 87].

Sponsor, the Restructuring contemplates full payment of all Claims against the Debtor and a distribution of any remaining Cash to the holders of Interests. In consideration of the foregoing, (a) Reorganized Debtor New Equity will be issued to the Plan Sponsor and the DIP Lender, (b) any Claims of the Prepetition Lender against the Debtor will be waived, and (c) the going-concern value of the Debtor's business and operating assets will be preserved. On and after the Effective Date, the Plan Administrator will liquidate and make distributions, in accordance with the Combined Disclosure Statement and Plan, from the Excluded Assets, the Available Cash, and the Plan Consideration. The Combined Plan and Disclosure Statement also contains (in Section 16) certain release, exculpation and related provisions.

The Combined Plan and Disclosure Statement should be confirmed for the following reasons:

**_First_**, the Combined Disclosure Statement and Plan provides creditors and interest holders with the best return that can be achieved under the circumstances of this Chapter 11 Case. Absent the Plan Consideration and waiver of the Prepetition Lender's claim, unsecured creditors and interest holders would receive no value under a chapter 11 plan or a chapter 7 proceeding.

**_Second_**, the Combined Disclosure Statement and Plan is uncontested. No objections have been filed and no informal objections are pending. The Combined Disclosure Statement and Plan is also consistent with stockholder approval of the Plan of Dissolution, as it leads to the same outcome—a liquidating distribution and cancellation of stock—yet, with a greater distribution for stockholders.

**_Finally_**, the Combined Disclosure Statement and Plan complies with all applicable provisions of Bankruptcy Code and the Bankruptcy Rules. As discussed below, the Combined Disclosure Statement and Plan satisfies all of the requirements of sections 1122, 1123, and 1129

of the Bankruptcy Code and rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Together, this Memorandum, the Combined Disclosure Statement and Plan, the Bertz Declaration, the Plan Supplement, and Confirmation Notices and service thereof, along with the files and records in this Chapter 11 Case, reflect that the Combined Plan and Disclosure Statement complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and provide the legal and evidentiary bases necessary for this Court to confirm the Plan.

## STATEMENT OF FACTS

### A.    General Background

1.      On July 1, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code to implement the Restructuring. The Debtor is operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no committees have been appointed or designated.

2.      A detailed description of the Debtor's business and facts precipitating the filing of the Debtor's chapter 11 case is set forth in the *Declaration of Robert Bertz in Support of the Debtor's Chapter11 Petition and First Day Pleadings* [Docket No. 4] (the "First Day Declaration").

3.      On July 15, 2025, the Debtor filed its *Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code* [Docket No. 49]. On July 30, 2025, the Debtor filed the *First Amended Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code* [Docket No. 89].

4.      On July 16, 2025, the Debtor filed the Confirmation Procedures Motion,[5] seeking, among other things, (i) conditional approval of the adequacy of Disclosures contained in the Combined Disclosure Statement and Plan, (ii) approval of certain forms of notice related to the Combined Disclosure Statement and Plan, and (iii) scheduling a hearing to consider approval and confirmation of the Combined Disclosure Statement and Plan (the "Combined Hearing").

5.      On July 30, 2025, the Court entered the Confirmation Procedures Order, which approved the Debtor's proposed forms of notice and set the Combined Hearing for August 28, 2025. On August 1, 2025, the Debtor caused its claims and noticing agent, Donlin, Recano & Company, LLC ("DRC") to send copies of the notice attached as Exhibit B to the Confirmation Procedures Motion (the "Combined Hearing Notice") and the *Notice of (I) Non-Voting Status Due to Non-Impairment, (II) Conditional Approval of Disclosures, (III) Hearing to Consider Confirmation of the Plan, and (IV) Deadline for Filing Objections to Confirmation of the Plan* [Docket No. 95] (the "Notice of Non-Voting Status," and with the Combined Hearing Notice, the "Confirmation Notices") to all known creditors and interest holders of record as of June 30, 2025. The Combined Hearing Notice provided notice of (i) the filing of the Combined Disclosure Statement and Plan and a summary of the Restructuring contemplated thereby, including releases, exculpation, and injunction provisions of the Plan, (ii) the date and time of the Combined Hearing, and (iii) the deadline to object to approval and confirmation of the Combined Disclosure Statement and Plan. *See* Combined Hearing Notice. The Notice of Non-Voting Status provided similar information about the Combined Hearing and informed recipients of their non-voting status. In

---

[5]     *Debtor's Motion for Entry of an Order (I) Granting Conditional Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Hearing on (A) the Adequacy of the Disclosure Statement, (B) Confirmation of the Plan, and (C) the Assumption or Rejection of Executory Contracts and Cure Amounts, and Setting Deadlines Related Thereto; (III) Approving the Forms of Notices to Non-Voting Classes; and (IV) Granting Related Relief* [Docket No. 50] (the "Confirmation Procedures Motion").

addition, copies of the Combined Plan and Disclosure Statement and all other pleadings and documents that have been filed in this Chapter 11 Case have been made available free of charge at DRC's website: www.donlinrecano.com/mrin (the "Case Website").

6.      Additionally, to ensure all of the Debtor's shareholders received notice of the Combined Hearing, the Debtor publicly filed with the Securities Exchange Commission ("SEC") a Form 8-K on July 29, 2025, providing the day and time of the Combined Hearing and the deadline to object to confirmation of the Combined Disclosure Statement and Plan. *See* Form 8-K of Marin Software Incorporated, filed July 29, 2025.

7.      On August 14, 2025, the Debtor filed the *Supplement to First Amended Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code* [Docket No. 104] (the "Initial Plan Supplement"). The Initial Plan Supplement included the following documents: (i) the Plan Administrator Agreement, (ii) list of proposed directors and officers of the Reorganized Debtor, (iii) designated Excluded Assets, (iv) the Subscription Option Election, (v) Amended and Restated Certificate of Incorporation, (vi) Amended and Restated Bylaws (and with the Amended and Restated Certificate of Incorporation, the "Reorganized Debtor's Charter Documents"), (vii) Unanimous Written Consent of the Shareholders of Marin Software Incorporated, (viii) Written Consent of the Sole Director of Marin Software Incorporated, and (ix) Form 8-K dated June 12, 2025.

8.      On August 26, 2025, the Debtor filed (i) the *Second Amended Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code* [Docket No. 111], which incorporated comments received from the Office of the United States Trustee, and (ii) the *Notice of Filing of Amended Supplement to Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter*

*11 of the Bankruptcy Code* [Docket No. 113], which included a modified Plan Administrator Agreement.

      **B.**      **Overview of the Plan**[6]

    9.      The primary purpose of the Plan is to implement the Restructuring, consistent with the RSA. If confirmed, the Plan will preserve the going-concern value of the Debtor's businesses, maximize recoveries available to all constituents, and provide for a distribution to the Debtor's stakeholders. Generally, the Plan provides for, among other things, (i) the funding of the Plan Consideration by the Plan Sponsor on the Effective Date; (ii) distribution of Available Cash to holders of Allowed Claims and Interests in accordance with the priority scheme established by the Bankruptcy Code or as otherwise agreed; (iii) the cancellation and discharge of all Interests; and (iv) the issuance of 100% of the New Equity in the Reorganized Debtor to the Plan Sponsor. This reorganization will enhance the Debtor's long-term growth prospects and competitive position and allow the Debtor to emerge from its Chapter 11 Case as a reorganized entity quickly and continue to provide services to its customers well into the future.

    10.      The following chart summarizes the treatment provided by the Plan to each class of Claims against and Interests in the Debtor, and indicates the voting status of each class:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| Class 2 – Prepetition Lender Secured Claims | Unimpaired | Deemed to Accept |
| Class 3 – Other Secured Claims | Unimpaired | Deemed to Accept |
| Class 4 – Unsecured Claims | Unimpaired | Deemed to Accept |
| Class 5 – Interests | Unimpaired | Deemed to Accept |

---

[6]   This summary is qualified in its entirety by the terms of the Plan. In the event of any conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

11.     The Plan provides that on the Effective Date, any executory contract or unexpired lease that has not expired by its own terms on or prior to the Effective Date and that (i) the Debtor has not assumed and/or assigned or rejected with the approval of the Bankruptcy Court prior to the Effective Date, (ii) is not the subject of a motion to assume the same pending as of the Effective Date, or (iii) is not identified in the Schedule of Assumed Contracts, shall be deemed rejected by the Debtor.

12.     As described above and further explained below, because the holders of Claims or Interests in Classes 1–5 (collectively, the "Non-Voting Classes") are deemed to accept the Plan, and therefore not entitled to vote to accept or reject the Plan, the Debtor does not believe it was necessary to solicit votes from such holders.

13.     The deadline to object to approval and confirmation of the Combined Disclosure Statement and Plan was August 26, 2025 at 4:00 p.m. (Eastern Time). No objections to the Combined Disclosure Statement and Plan were timely filed. As of the date hereof, the Debtor has received informal comments from the Office of the United States Trustee, which were addressed in the *Second Amended Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code.*

## <u>MEMORANDUM OF LAW</u>

14.     This Memorandum has six parts: Section I addresses the requirements for confirmation pursuant to Bankruptcy Code sections 1123 and 1129; Section II addresses adequacy of the disclosures in the Disclosure Statement; Section III addresses the assumption or rejection of executory contracts and unexpired leases under the Plan; Section IV addresses the Debtor Releases, exculpation, and injunction provisions under the Plan; Section V addresses the

modifications of the Combined Disclosure Statement and Plan; and Section VI addresses the Debtor's request for a waiver of Bankruptcy Rule 3020(e).

15.      Jurisdiction over this matter is proper pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

## I.      The Combined Disclosure Statement and Plan Complies with the Confirmation Standards Set Forth in Section 1129 of the Bankruptcy Code.

16.      Section 1129 of the Bankruptcy Code sets forth the requirements that must be satisfied for a plan to be confirmed. Through evidence to be presented at the Confirmation Hearing, as set forth in the Bertz Declaration, and as demonstrated herein, the Debtor will establish, by a preponderance of the evidence, that the Combined Disclosure Statement and Plan satisfies all confirmation requirements.[7]

### A.      The Combined Disclosure Statement and Plan Complies with the Applicable Provisions of Section 1129(a)(1) of the Bankruptcy Code.

17.      Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan may be confirmed only if it "complies with applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). It is well-established that the requirement in section 1129(a)(1) primarily focuses on compliance with section 1122 (governing classification of claims and interests) and section 1123 (governing necessary and permissible provisions).[8] As demonstrated below, the Combined Disclosure

---

[7]      *See, e.g.*, *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir.1993) ("The . . . preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown.").

[8]      *See In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986) (stating that "[o]bjections to confirmation raised under § 1129(a)(1) generally involve the failure of a plan to conform to the requirements of § 1122(a) or § 1123)"); *In re Texaco, Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In determining whether a plan complies with section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization."); *In re Diocese of Camden*, 653 B.R. 309,

Statement and Plan fully complies with all of the applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1), including, without limitation, sections 1122 and 1123.

### 1. The Combined Disclosure Statement and Plan Complies with the Requirements of Section 1122 of the Bankruptcy Code.

18.     Pursuant to section 1122 of the Bankruptcy Code, claims or interests within a given class must be "substantially similar" to the other claims or interests in that class. Section 1122 of the Bankruptcy Code, however, does not require that all substantially similar claims or equity interest must be classified together. Instead, courts have recognized that similar claims may be classified separately, provided that there is a basis for doing so.[9] Courts are also afforded broad discretion in approving a plan proponent's classification structure and should consider the specific facts of each case when making a determination regarding classification.[10]

19.     Section 9 of the Combined Disclosure Statement and Plan provides for the separate classification of Claims and Interests into five distinct Classes based upon (a) their secured status, if applicable, (b) their legal priority against the Debtors' assets, and (c) other relevant factors:[11]

| CLASS | CLAIM / EQUITY INTEREST |
|---|---|
| 1 | Priority Non-Tax Claims |
| 2 | Prepetition Lender Secured Claims |
| 3 | Other Secured Claims |
| 4 | Unsecured Claims |
| 5 | Interests |

---

334 (Bankr. D. N.J. 2023) ("Courts interpret [section 1129(a)(1)] to mean that a plan must meet the requirements of Bankruptcy Code sections 1122 and 1123").

[9]     *See, e.g., Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Court N.Y., N.Y. (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996).

[10]    *See e.g., In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060–61 (3d Cir. 1987) (observing that "Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the propriety of plans in light of the facts of each case"); *see also In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013) ("The Bankruptcy Court has broad discretion to decide if a plan satisfies that requirement, and we will uphold a plan's classification scheme so long as it is reasonable and does not arbitrarily designate classes.")

[11]    In accordance with 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.  *See* Combined Disclosure Statement and Plan. at § 8.

*See* Combined Disclosure Statement and Plan, at § 9.1; *see also* Bertz Declaration, ¶ 13.

20.     The Combined Disclosure Statement and Plan's classification scheme complies with section 1122 of the Bankruptcy Code because each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such Class. Accordingly, the legal rights of each of the Holders of Claims or Interest within a particular Class are substantially similar to other Holders of Claims or Interests within that Class, and the Combined Disclosure Statement and Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

> **2.     The Combined Disclosure Statement and Plan Complies with the Requirements of Section 1123(a) of the Bankruptcy Code.**

21.     Section 1123(a) of the Bankruptcy Code sets forth seven (7) requirements for every chapter 11 plan.[12] The Combined Disclosure Statement and Plan complies with each such requirement.

> **i.     Section 1123(a)(1): Designation of Classes of Claims and Interests**

22.     Section 1123(a)(1) of the Bankruptcy Code requires that a chapter 11 plan designate classes of claims and equity interests subject to section 1122 of the Bankruptcy Code, other than the kinds specified in sections 507(a)(2) (administrative expenses claims), 507(a)(3) (claims arising during the "gap" period in an involuntary case), and 507(a)(8) of the Bankruptcy Code (unsecured tax claims).  As discussed above, and subject to section 1122 of the Bankruptcy Code, Section 9 of the Plan designates four Classes of Claims and one Class of Interests, not including the Claims of the kinds specified in sections 507(a)(2), (3), and (8) of the Bankruptcy Code. Thus,

---

[12]    Section 1123(a)(8) of the Bankruptcy Code is not applicable because the Debtor is a corporation.

the Combined Disclosure Statement and Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### ii. Section 1123(a)(2): Classes that Are Not Impaired by the Plan

23.    Section 1123(a)(2) of the Bankruptcy Code requires that a chapter 11 plan specify which classes of claims or equity interests are unimpaired by the plan. As set forth in Section 9 of the Combined Disclosure Statement and Plan, Claims in Classes 1, 2, 3 and 4 and Interests in Class 5 are designated as unimpaired under the Combined Disclosure Statement and Plan. *See* Combined Disclosure Statement and Plan, at § 9. Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii. Section 1123(a)(3): Treatment of Classes that Are Impaired by the Plan

24.    Section 1123(a)(3) of the Bankruptcy Code requires that a chapter 11 plan specify how it will treat impaired classes of claims or interests. Section 9.1 of the Combined Disclosure Statement and Plan specifies that no Classes of Claims or Interests are Impaired under the Plan. *See* Combined Disclosure Statement and Plan, at §§ 2.1 and 9.1. Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv. Section 1123(a)(4): Equal Treatment Within Each Class

25.    Section 1123(a)(4) of the Bankruptcy Code requires that a chapter 11 plan provide the same treatment for each claim or interest within a particular class, unless the holder of a claim or interest agrees to receive less favorable treatment. Pursuant to the Combined Disclosure Statement and Plan, the treatment of each Claim against or Interest in the Debtors in each respective Class is the same as the treatment of each other Claim or Interest in such Class, unless

the Holder has agreed to receive less favorable treatment. Thus, the Combined Disclosure Statement and Plan satisfies the requirement of section 1123(a)(4) of the Bankruptcy Code.

### v.    Section 1123(a)(5): Adequate Means for Implementation

26.    Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means for the plan's implementation . . . ." 11 U.S.C. § 1123(a)(5). Among other things, Section 14 and other provisions of the Combined Disclosure Statement and Plan provide adequate means for implementation of the Combined Disclosure Statement and Plan, including provisions for the: (a) continued existence of the Reorganized Debtor; (b) discharge of the Debtors' current management and board of directors; (c) appointment of, and designation of the authority and role of, the Plan Administrator; (d) closing of the transactions required and contemplated under the Plan; (e) vesting of Estate property in the Reorganized Debtor; (f) the Reorganized Debtor's rights regarding litigation of Causes of Action; (g) termination of the Claims Agent; (h) application for entry of a final decree; and (i) winddown of non-Debtor subsidiaries. *See* Combined Disclosure Statement and Plan, § 14.

27.    Specifically, the Combined Disclosure Statement and Plan provides that the Reorganized Debtor will continue to exist after the Effective Date, and title to all Estate Property, except for the Excluded Assets, the Available Cash, and the Plan Consideration will vest in the Reorganized Debtor. Further, except as otherwise set forth in the Combined Disclosure Statement and Plan, the Debtor will reject all of its executory contracts and unexpired leases, except for those (i) assumed and/or assigned or rejected with the approval of the Bankruptcy Court prior to the Effective Date, (ii) subject of a motion to assume the same pending as of the Effective Date, or (iii) identified in the Schedule of Assumed Contracts.

28.    Accordingly, the Combined Disclosure Statement and Plan, together with the documents and agreements contemplated therein and in the Plan Supplement, sets forth the means

for the Combined Disclosure Statement and Plan's implementation as required by section 1123(a)(5) of the Bankruptcy Code.

>    **vi.**    **Section 1123(a)(6): Prohibition on the Issuance of Non-Voting Securities**

29.    Section 1123(a)(6) of the Bankruptcy Code prohibits the issuance of nonvoting equity securities, and requires amendment of a debtor's charter to so provide. *See* 11 U.S.C. § 1123(a)(6). Section 1123(a)(6) of the Bankruptcy Code is satisfied because the Reorganized Debtor is not issuing any non-voting equity securities. Further, Section 19.14 of the Combined Disclosure Statement and Plan specifically provides that "the Debtor's formation documents shall be deemed amended to prohibit the issuance by the Debtor of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code." Furthermore, the Plan Supplement contains an Amended and Restated Certificate of Incorporation of Marin Software Incorporated a Delaware corporation, which prohibits the issuance of nonvoting equity securities. *See* Docket No. 104-5. Therefore, the Combined Disclosure Statement and Plan satisfies the requirements set forth in section 1123(a)(6) of the Bankruptcy Code.

>    **vii.**    **Section 1123(a)(7): Provisions Regarding Directors and Officers**

30.    Section 1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7). Section 1123(a)(7) is augmented by the restrictions set forth in section 1123(a)(6) and by section 1129(a)(5), which requires that the debtor disclose the identity and affiliation of individuals proposed to serve as directors, officers, or voting trustees of the debtor following confirmation. Additionally, section 1129(a)(5)(A)(ii) requires that the appointment or continuance of any

director or officer be consistent with the interests of creditors and equity securities holders and with public policy. *See* 11 U.S.C. § 1129(a)(5)(A)(ii).

31.     Section 14.2 of the Combined Disclosure Statement and Plan discharges all of the Debtor's directors and officers from their duties as of the Effective Date without any further action. The Plan Sponsor is electing a new member for the board of directors and officers of the Reorganized Debtor, as of the Effective Date, in accordance with the Reorganized Debtor's Charter Documents, as set forth in the Plan Supplement. Each of the new directors and officers is well qualified and his service will be in the best interests of the Reorganized Debtor and consistent with the interests of the Reorganized Debtor's stakeholders and public policy, and therefore satisfies section 1123(a)(7) of the Bankruptcy Code.

### 3.     The Plan Incorporates Certain Permissible Provisions Consistent with Bankruptcy Code Section 1123(b)

32.     Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be incorporated in a chapter 11 plan. The Combined Disclosure Statement and Plan contains certain of these provisions specifically contemplated by section 1123(b), including provisions regarding: (a) impairment and unimpairment of Classes of Claims and Interests (Combined Disclosure Statement and Plan, at § 10) as contemplated by section 1123(b)(1); (b) the assumption or rejection of executory contracts and unexpired leases (Combined Disclosure Statement and Plan, at § 13) as contemplated by section 1123(b)(2); (c) settlement or retention of claims belonging to the estates (Combined Disclosure Statement and Plan, at § 12) as contemplated by section 1123(b)(3); and (d) modification of rights of Holders of Secured Claims (Combined Disclosure Statement and Plan, at § 10) as contemplated by section 1123(b)(5) of the Bankruptcy Code.

33.     Moreover, the Combined Disclosure and Plan contains other provisions that fall within the catch-all discretionary provision in section 1123(b)(6) of the Bankruptcy Code, which permits a plan to include other provisions not inconsistent with the applicable provisions of the Bankruptcy Code. *See*, *e.g.*, Combined Disclosure Statement and Plan at § 18 (providing for the Court's retention of jurisdiction on certain specified matters); Combined Disclosure Statement and Plan at § 11 (setting forth provisions regarding distributions under the Plan); and Combined Disclosure Statement and Plan at § 16 (containing releases, injunction, and exculpation provisions that are integral to the Plan and are consistent with applicable provisions of the Bankruptcy Code and case law in the Third Circuit).[13] Thus, the Combined Disclosure Statement and Plan complies with section 1123(b) of the Bankruptcy Code.

### 4.     The Combined Disclosure Statement and Plan Complies with Section 1123(d) of the Bankruptcy Code

34.     Section 1123(d) of the Bankruptcy Code provides that, "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d). As required by section 365(b)(1) of the Bankruptcy Code, any monetary amounts by which any executory contract or unexpired lease that may be assumed under the Combined Disclosure Statement and Plan is in default shall be satisfied by payment of the required cure amount, if any, as of the Effective Date of the Combined Disclosure Statement and Plan. Accordingly, the Disclosure Statement and Plan complies with section 1123(d) of the Bankruptcy Code.

* * * * *

35.     Accordingly, the Combined Disclosure Statement and Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code, as well as with other applicable

---

[13]    The Plan's release and exculpation provisions are discussed in Section IV, *infra*.

provisions of the Bankruptcy Code and the Bankruptcy Rules. Thus, the Combined Disclosure Statement and Plan satisfies the requirements of 1129(a)(1) of the Bankruptcy Code.

## B.    The Debtor has Complied with Section 1129(a)(2) of the Bankruptcy Code

36.    Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the allocable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). Whereas section 1129(a)(1) of the Bankruptcy Code focuses on the form and content of a plan itself, section 1129(a)(2) is concerned with the activities of the plan proponent.[14] That is, the inquiry under section 1129(a)(2) focuses on whether the plan proponent has complied with the disclosure and solicitation requirements of section 1125 and 1126.[15] Here, the Debtor has complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 and the applicable Bankruptcy Rules regarding plan disclosures and solicitation.

### 1.    The Debtor Has Complied with Section 1125 of the Bankruptcy Code

37.    Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a chapter 11 plan from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after a notice and hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Bankruptcy Rule 3017 further provides that the court may vary the requirements to mail a chapter 11 plan and disclosure statement for an unimpaired class of

---

[14]    Collier on Bankruptcy ¶ 1129.02[2] (Richard Levin & Henry J. Sommer eds., 16th ed.).

[15]    *See* S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912 ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368; *see also In re WorldCom, Inc.*, No. 02-13533(AJG), 2003 Bankr. LEXIS 1401 at *144 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that "[t]he legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code."); *In re Johns-Manville*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code.").

creditors or equity security holders. Fed. R. Bankr. P. 3017(d)(1)(B). Instead, "[i]f the court orders that the disclosure statement and plan (or the plan summary) not be mailed to an unimpaired class, a notice that the class has been designated as unimpaired must be mailed to the class members." Fed. R. Bankr. P. 3017(d)(3).

38.     In this case, as described below, no parties were required to be solicited, and none were solicited, to vote to accept or reject the Combined Disclosure Statement and Plan. Additionally, on July 30, 2025, the Court entered the Confirmation Procedures Order conditionally approving the adequacy of the Disclosures in the Combined Disclosure Statement and Plan and approving the procedures for the transmittal of the Combined Disclosure Statement and Plan and other notices.

39.     Beginning on or about August 1, 2025, the Debtor—through DRC—distributed the Combined Hearing Notice to all known creditors and interest holders of record as of June 30, 2025, which gave each notice of (i) the filing of the Combined Disclosure Statement and Plan and a summary of the Restructuring contemplated thereby, including releases, exculpation, and injunction provisions of the Plan, (ii) from whom one could obtain the Combined Disclosure Statement and Plan, (iii) the date and time of the Combined Hearing, and (iv) the deadline to object to approval and confirmation of the Combined Disclosure Statement and Plan. Further, DRC distributed the Notice of Non-Voting Status to the holders of Claims or Interests in Classes 1–5, in accordance with Bankruptcy Rule 3017.[16] Copies of the Plan and the Disclosure Statement have also been made available free of charge at the Case Website. Furthermore, to ensure all of the Debtor's shareholders received notice of the Combined Hearing, the Debtor publicly filed with the Securities Exchange Commission ("SEC") a Form 8-K on July 29, 2025, providing the day and

---

[16] *See Affidavit of Service* [Docket No. 101].

time of the Combined Hearing and the deadline to object to confirmation of the Combined

Disclosure Statement and Plan. *See* Form 8-K of Marin Software Incorporated, filed July 29, 2025.

40.     No objections to the Combined Disclosure Statement and Plan were filed. As of the

date hereof, the Debtor has received informal comments from the Office of the United States

Trustee, which were addressed in the *Second Amended Combined Disclosure Statement and Plan*

*of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code*.

### 2.     The Debtor Has Complied with Section 1126 of the Bankruptcy Code

41.     Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of

a plan and generally provides that holders of claims or equity interests are entitled to vote on such

plan; however, an unimpaired class is conclusively deemed to accept the plan.[17] Section 1124 of

the Bankruptcy Code further provides that a class of claims or interests is impaired under a plan

unless, the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim

or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124. The relevant inquiry as

to whether a class is impaired is "whether the plan itself is a source of limitation on a creditor's

legal, equitable, or contractual rights."[18]

42.     The Holders of Claims in Classes 1, 2, 3, and 4 are unimpaired under the Combined

Disclosure Statement and Plan. The Combined Disclosure Statement and Plan provides, except to

the extent that a holder of such a claim agrees to a less favorable treatment, the payment in full of

Allowed Priority Non-Tax Claims, Allowed Other Secured Claims, and Allowed General

Unsecured Claims, on the latest of either (i) on or as soon as practicable after the Effective Date,

---

[17]   Section 1126(f) of the Bankruptcy Code provides that "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f).

[18]   *Solow v. PPI Enters. (U.S.) (In re PPI Enters. (U.S.))*, 324 F.3d 197, 204 (3d Cir. 2003).

(ii) on or as soon as practicable after the date such claim becomes Allowed, and (iii) the date such Allowed Claim is payable under applicable non-bankruptcy law. Regarding Class 2, the Prepetition Lender has agreed to waive its right to a distribution on account of its Allowed Prepetition Lender Secured Claim for the benefit of the Debtors' other creditors and interest holders, and thus, is also unimpaired under the Combined Disclosure Statement and Plan. Therefore, the Holders of Claims in Classes 1, 2, 3, and 4 are conclusively presumed to accept the Combined Disclosure Statement and Plan and were not required to be solicited to vote to accept the Combined Disclosure Statement and Plan.

43.    Similarly, Class 5 is unimpaired, because the Combined Disclosure Statement and Plan is not a source of limitation on the rights of a Holder of an Allowed Interest. Prepetition, the board of directors of the Debtor (the "Board") approved the voluntary dissolution and liquidation (the "Dissolution") of Marin Software Incorporated pursuant to the Plan of Dissolution (but subject to the Company's ability to abandon or delay the Plan of Dissolution in accordance with the terms thereof). The Plan of Dissolution proposed, among other things, to liquidate the Debtor's assets, pay the Debtor's expenses, and if funds were available, to make liquidating distributions to Marin's stockholders. The Plan of Dissolution provided that liquidating distributions would be made to the Debtor's stockholders and such distributions would be deemed to be in complete cancellation of all of the outstanding shares of capital stock of the Company as of the date the Company terminated its legal existence in accordance with section 278 of the Delaware General Corporation Law. *See* Schedule 14A, Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 of Marin Software Incorporated, filed May 7, 2025.[19]

---

[19]    A copy of Schedule 14A, Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 of Marin Software Incorporated, filed May 7, 2025, which includes the Plan of Dissolution (Appendix A) is attached to the Bertz Declaration as Exhibit A.

44.     On June 11, 2025, Marin held a special meeting of stockholders of Marin (the "Special Meeting") and held a vote to approve the Dissolution, subject to Marin's ability to abandon or delay the Plan of Dissolution in accordance with the terms thereof. Holders of common stock and the holder of the Series A Preferred Stock, collectively representing at least a majority of the outstanding voting power of Marin's capital stock, voted to approve the proposal, and the proposal passed. Therefore, as of the Petition Date, the holders of common stock had agreed to the cancellation of their Interests in exchange for a liquidating distribution.

45.     Like the Plan of Dissolution, the Combined Disclosure Statement and Plan provides that each Holder of an Allowed Interest will receive a *pro rata* distribution after payment in full of Allowed Claims and that their Interests will be cancelled, retired, extinguished, and discharged. However, instead of the Debtor's common stockholders receiving minimal funds that would have been available under the Plan of Dissolution, the Debtor's common stockholders will now have the benefit of the Plan Consideration and any Available Cash, which has an estimated value between $2.5 and $4 million.

46.     Moreover, the treatment of Holders of an Allowed Interest under the Combined Disclosure Statement and Plan is consistent with how interest holders would be treated under Delaware law. Section 281(b) of Delaware General Corporation Law provides for the payment and distribution to claimants and stockholders when a corporation has dissolved and adopted a plan of distribution. This section states in pertinent part:

> The plan of distribution shall provide that such claims shall be paid in full and any such provision for payment made shall be made in full if there are sufficient assets. If there are insufficient assets, such plan shall provide that such claims and obligations shall be paid or provided for according to their priority and, among claims of equal priority, ratably to the extent of assets legally available therefor. ***Any remaining assets shall be distributed to the stockholders of the dissolved corporation***.

8 Del. C. § 281(b) (emphasis added).

47.     Because the Holders of Interest are receiving what they were entitled to before the Petition Date—a pro rata distribution based on the remaining assets of the Debtor—the Holders of Interests in Class 5 are unimpaired under the Combined Disclosure Statement and Plan, and thus, are conclusively presumed to have accepted the Combined Disclosure Statement and Plan. The Debtor was not required to solicit votes from Class 5.

48.     Accordingly, the Debtor has proceeded in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Confirmation Procedures Order, all applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations in not soliciting the acceptance of the Combined Disclosure Statement and Plan by any parties. The Debtor, therefore, has complied with the applicable provisions of the Bankruptcy Code and has satisfied the requirements of Bankruptcy Code section 1129(a)(2).

**C.     The Combined Disclosure Statement and Plan Has Been Proposed in Good Faith and Complies with Section 1129(a)(3) of the Bankruptcy Code**

49.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Good faith is generally interpreted to mean that there is a reasonably likelihood that the "plan will fairly achieve a result consistent with the objective and purposes of the Bankruptcy Code."[20] The Third Circuit has recognized at least two policies or objectives of the Bankruptcy Code: (i) preserving going concerns and (ii) maximizing property available to satisfy creditors.[21]

---

[20]     *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000) quoting *In re Abbotts Dairies*, 788 F.2d 143, n. 5 (3d Cir. 1986)).

[21]     *In re BSA*, 137 F.4th 126, 166 (3d Cir. 2025)

50.     The Debtor has proposed the Combined Disclosure Statement and Plan in good faith. The Combined Disclosure Statement and Plan has been proposed in compliance with applicable law, rules, and regulations, and is the product of arm's-length negotiations by and among the Debtor and the Supporting Parties. Furthermore, the Debtor and its professionals have acted in "good faith" within the meaning of section 1125(e). The Combined Disclosure Statement and Plan has been conceived and proposed with the legitimate and honest purposes of preserving the ongoing operations of the Debtor and maximizing the value of the Debtor's assets and the recovery to creditors and stakeholders. Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

**D.      The Combined Disclosure Statement and Plan Provides for Bankruptcy Court Approval of Certain Administrative Expenses Pursuant to Section 1129(a)(4) of the Bankruptcy Code**

51.     Section 1129(a)(4) of the Bankruptcy Code requires that any payments by a debtor "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case," either be approved by the Court as reasonable or subject to approval of the Court as reasonable. 11 U.S.C. § 1129(a)(4). Section 1129(a)(4) has been construed to require that all payment on account of professional fees and expenses from estate assets be subject to the Bankruptcy Court's review and approval.[22]

52.     In accordance with section 1129(a)(4) of the Bankruptcy Code, no payment will be made from assets of the Estate on account of Professional Fee Claims other than payments that are authorized by order of the Bankruptcy Court. Pursuant to Section 8.2(b) of the Combined Disclosure Statement and Plan, all applications for payment of Professional Fee Claims must be filed with the Bankruptcy Court within thirty (30) days after the Effective Date. Such Professional

---

[22]    *See e.g., Lisanti Foods, Inc. v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491, 503 (D.N.J. 2005); *Resorts Int'l, Inc.*, 145 B.R. 412, 476 (Bankr. D.N.J. 1990).

Fee Claims are only payable to the extent approved by the Bankruptcy Court. Accordingly, the requirement of section 1129(a)(4) of the Bankruptcy Code has been satisfied.

E.    **The Combined Disclosure Statement and Plan Provides All Necessary Information Regarding Individuals Who Will Hold Post-Confirmation Positions Pursuant to Section 1129(a)(5) of the Bankruptcy Code**

53.    Section 1129(a)(5) requires that the identity and affiliations of the individuals proposed to serve after confirmation as a director or officer, and the identity and nature of any insider compensation, be disclosed.[23] The Debtor has complied with section 1129(a)(5) by providing in the Plan Supplement the identity of the Plan Administrator (Armanino Advisory LLC) and the Plan Administrator's hourly rates, which are:

| Representative | Rate |
|---|---|
| Partners | $495–$695 |
| Senior or Managing Directors | $440–$595 |
| Directors | $390–$495 |
| Managers | $250–$395 |
| Consultants and Staff | $195–$275 |

The Debtor believes that the appointment of this representative is "consistent with the interests of creditors and equity security holders and with public policy."

54.    The Plan Supplement also identifies the proposed officers and director of the Reorganized Debtor to be employed after the Effective Date. Each identified person is well qualified and his service will be in the best interests of the Reorganized Debtor and consistent with the interests of the Reorganized Debtor's stakeholders and public policy.

55.    Further, as set forth in Section 14.2 of the Combined Disclosure Statement and Plan, all of the Debtor's directors and officers are discharged from their duties as of the Effective

---

[23]    *See In re Landing Assocs.,* 157 B.R. 791, 817 (Bankr. W.D. Tex. 1993) ("In order to lodge a valid objection under § 1129(a)(5), a creditor must show that a debtor's management is unfit or that the continuance of this management post-confirmation will prejudice the creditors.").

Date without any further action. Therefore, the requirements of section 1129(a)(5) of the Bankruptcy Code are satisfied.

**F.      No Governmental Regulatory Commission Has Jurisdiction Over the Debtor Pursuant to Section 1129(a)(6) of the Bankruptcy Code**

56.      Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan. This provision is not applicable, as the Debtor's business did not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after confirmation.

**G.      Section 1129(a)(7) of the Bankruptcy Code Is Inapplicable**

57.      Section 1129(a)(7) of the Bankruptcy Code, often referred to as the "best interest of the creditors test," requires that holders of impaired claims or interest which do not vote to accept the chapter 11 plan it issue "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date." 11 U.S.C. § 1129(a)(7). The test focuses on individual creditors' claims rather than classes of claims.[24]

58.      As section 1129(a)(7) of the Bankruptcy Court makes clear, the liquidation analysis applies only to non-accepting impaired claims or equity interests. If a class of claims or equity interests unanimously accepts the plan, the best interests test is deemed satisfied for all members of that class. Moreover, pursuant to Bankruptcy Code section 1126(f), an unimpaired class is conclusively deemed to have accepted the plan.  Here, as set forth above, all Holders of Claims

---

[24]      *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999).

and Interests are Unimpaired under the Plan, and thus, the "best interests of the creditors test" does not apply.

**H.      The Plan Has Been Accepted by All Classes of Claims and Interests Pursuant to Section 1129(a)(8) of the Bankruptcy Code**

59.      Section 1129(a)(8) requires either that each class of claims and interests under a plan must either (a) accept the plan, or (b) be rendered unimpaired under the plan. As set forth above, all Holders of Claims and Interests are Unimpaired under the Plan, and thus section 1129(a)(8) of the Bankruptcy Code is satisfied.

**I.      The Plan Provides for the Statutorily Mandated Treatment of Administrative and Priority Tax Claims Under Section 1129(a)(9) of the Bankruptcy Code**

60.      Section 1129(a)(9) of the Bankruptcy Code requires that entities holding allowed claims entitled to priority under section 507(a)(1)-(8) of the Bankruptcy Code receive specified cash payments under a plan. Section 1129(a)(9) provides that holders of certain types of priority claims must receive specific treatment dependent upon the circumstances of such claims, unless the holders of such claims have agreed to different treatment. *See* 11 U.S.C. § 1129(a)(9). Section 8 of the Plan provides for payment of Allowed Administrative Claims and Allowed Priority Tax Claims in the manner required by section 1129(a)(9) of the Bankruptcy Code.

61.      The Plan also provides that the deadline for submission by Professionals for Bankruptcy Court approval of Professional Fees for services rendered before the Effective Date shall be thirty (30) days after the Effective Date. Therefore, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**J.      Section 1129(a)(10) of the Bankruptcy Code Is Inapplicable**

62.      Section 1129(a)(10) of the Bankruptcy Code requires that, if a class of claims is impaired under a plan, at least one class of impaired claims must have voted to accept the plan, as determined without including any acceptance of the plan by an insider. As discussed above, no

Class of Claims is impaired under the Plan. As such, section 1129(a)(10) of the Bankruptcy Code

is inapplicable in this Chapter 11 Case.

### K.    The Combined Disclosure Statement and Plan is Feasible Pursuant to Section 1129(a)(11) of the Bankruptcy Code

63.    Section 1129(a)(11)'s feasibility test mandates that confirmation of a plan will not

likely be followed a liquidation or further reorganization of the debtor.[25] For a plan to be feasible

it must provide "a realistic and workable framework" that is "reasonably likely to succeed on its

own terms without a need for further reorganization on the debtor's part."[26] A debtor must

demonstrate, by a preponderance of the evidence, that the plan has a reasonable assurance of

success.[27] To demonstrate that a plan is feasible, however, it is not necessary that success be

guaranteed.[28] The key element of feasibility is whether there exists a reasonable likelihood that the

provisions of the plan can be performed and that the reorganized debtor will be commercially

viable after the plan's effective date.[29]

---

[25]    11 U.S.C. § 1129(a)(11) ("Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."); *see also In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012) ("A plan is confirmable only if it is feasible.").

[26]    *In re Am. Capital Equip., LLC*, 688 F.3d at 156.

[27]    *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160, 1165-66 (5th Cir. 1993) (rejecting "clear and convincing" as the applicable standard); *see also Mercury Capital Corp. v. Milford Conn. Assocs., L.P.,* 354 B.R. 1, 9 (D. Conn. 2006) ("A 'relatively low threshold of proof' will satisfy the feasibility requirement.") (quoting *Computer Task Grp., Inc. v. Brothby (In re Brothby)*, 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003)); *In re W.R. Grace & Co.*, 475 B.R. 34, 114 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013) (holding that this showing requires a demonstration that the plan is not simply a "visionary scheme").

[28]    *In re Am. Capital Equip., LLC,* 688 F.3d at 156 ("§ 1129(a)(11) does not require a plan's success to be guaranteed"); *see In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992) ("It is not necessary that success be guaranteed, but only that the plan present a workable scheme of organization and operation from which there may be a reasonable expectation of success. . . . The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required.") (internal citations omitted).

[29]    *See In re Texaco Inc.,* 84 B.R. 893, 910 (Bankr. S.D.N.Y. 1988) ("All that is required is that there be a reasonable assurance of commercial viability"); *Clarkson v. Cooke Sales & Servs. Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) ("[T]he feasibility test contemplates 'the probability of actual performance of the provisions of the plan ... The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.'") (quoting *In re Bergman*, 585 F.2d 1172, 1179 (2d Cir. 1978)).

64.     The Plan Sponsor is committed to a successful reorganization of the Debtor. The Plan Sponsor is in the business of acquiring and strengthening software companies, including companies in similar areas of business as the Debtor. The acquisition of the Reorganized Debtor fits within the Plan Sponsor's strategic plan, namely to operate and continue the business. The Plan Sponsor also values the Debtor's intellectual property portfolio. To that end, the Plan Sponsor has committed to providing the Plan Consideration to acquire the Debtor and its assets, through acquisition of the New Equity while also providing a distribution to Holders of Claims and Interests. The Plan Sponsor believes that under its management, the Reorganized Debtor will enhance its relationships with its customers, while leveraging its platform to drive efficiency and profitability. The Plan Sponsor possesses sufficient liquidity to consummate the Combined Disclosure Statement and Plan and invest in the success of the Reorganized Debtor, and believes that it will be able to leverage its relationships, expertise, and know-how to help the Reorganized Debtor thrive.

65.     The Debtor filed the Chapter 11 Case, in part, because of its substantially declining revenue and deteriorating liquidity. Through the Plan Sponsor's portfolio of similar technology companies, the Reorganized Debtor will be better positioned to operate successfully moving forward. Accordingly, the Plan Sponsor is confident that the Reorganized Debtor will be feasible going forward, and will not require a further reorganization. Further, no Distributions to Creditors or Interest Holders are dependent on any metrics related to the Reorganized Debtor, such as the Reorganized Debtor's profitability. Such holders are entitled to received their Distribution from the Consideration to be paid by the Plan Sponsor, regardless of the profitability of the Reorganized Debtor. Accordingly, the Combined Disclosure Statement and Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

**L.** **The Combined Disclosure Statement and Plan Provides for the Payment of All Fees Under 28 U.S.C. § 1930 Pursuant to Section 1129(a)(12) of the Bankruptcy Code**

66.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan." 11 U.S.C. § 1129(a)(12). Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under chapter 123 of title 28" are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(2).

67.    In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, Section 19.1 of the Combined Disclosure Statement and Plan provides that statutory fees under 28 U.S.C. § 1930(a) shall be paid in the ordinary course until the Chapter 11 Case is closed under section 350 of the Bankruptcy Code. Thus, the Combined Disclosure Statement and Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

**M.** **Sections 1129(a)(13) Through 1129(a)(16) Do Not Apply to the Plan**

68.    Sections 1129(a)(13)-(16) of the Bankruptcy Code are inapplicable to the Debtors and the Combined Disclosure Statement and Plan, as the Debtor (i) does not provide "retiree benefits" within the meaning of section 1114 of the Bankruptcy Code (*see* 11 U.S.C. § 1129(a)(13)); (ii) has no domestic support obligations (*see* 11 U.S.C. § 1129(a)(14)); (iii) is not an individual (*see* 11 U.S.C. § 1129(a)(15)); and (iv) is not a non-profit corporation (*see* 11 U.S.C. § 1129(a)(16)).

**N.** **Confirmation of the Plan Pursuant to Section 1129(b) of the Bankruptcy Code Is Not Needed**

69.    Section 1129(b) of the Bankruptcy Code provides a mechanism for confirmation of a chapter 11 plan in circumstances where not all impaired classes of claims and equity interest vote to accept that plan. As set forth in the Combined Disclosure Statement and Plan, there are no

impaired Classes of Claims or Interests. Accordingly, the section 1129(b) of the Bankruptcy Code is inapplicable.

O.    **The Combined Disclosure Statement and Plan is the Only Plan Currently on File (Bankruptcy Code Section 1129(c))**

70.    Section 1129(c) of the Bankruptcy Code provides that, with a limited exception, a Bankruptcy Court may only confirm one plan.  The Combined Disclosure Statement and Plan is the only plan that has been filed in the Chapter 11 Case and is the only plan that satisfies the requirements of subsection (a) of section 1129 of the Bankruptcy Code. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

P.    **The Principal Purpose of the Combined Disclosure Statement and Plan is Not the Avoidance of Taxes (Bankruptcy Code Section 1129(d))**

71.    Section 1129(d) of the Bankruptcy Code provides that on request of a party in interest that is a governmental unit, which holds the burden of proof on this issue, the Bankruptcy Court may not confirms a plan if the principal purpose of the plan is the avoidance of taxes or the application of section 5 of the Securities Act. The Combined Disclosure Statement and Plan was not proposed to avoid taxes or section 5 of the Securities Act, and no governmental unit has argued otherwise. *See* Bertz Declaration, ¶ 27. Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

II.    **The Disclosure Statement Provides Adequate Information**

72.    Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and equity interests with "adequate information" regarding the proposed chapter 11 plan. *See* 11 U.S.C. § 1125(b). The Debtor respectfully submits that the Disclosure Statement contains "adequate information" within the meaning of section 1125(a)(1) of the Bankruptcy Code and, thus, should be approved by the Bankruptcy Court.

73.    Section 1125(a)(1) of the Bankruptcy Code provides:

"[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information . . . .

11 U.S.C. § 1125(a)(1).

74.    Thus, a debtor's disclosure statement must, as a whole, provide information that is sufficiently detailed, so far as "reasonably practicable," to permit an "informed judgment" by impaired creditors.[30] At a minimum, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."[31]

75.    The Disclosure Statement is extensive and comprehensive and contains descriptions and summaries of, among other things the history of the Debtor, the restructuring process that led to the RSA and the Plan, certain events preceding the commencement of the Chapter 11 Case, treatment of the Claims and Interests under the Plan, material terms of the Plan, (including the releases, injunction and exculpation provisions), risk factors affecting the Plan, and federal tax law consequences of the Plan. In addition, the Disclosure Statement is the product of a collaborative effort among the Debtor and the Supporting Parties.

76.    Accordingly, based on the foregoing and the lack of any objection to the Disclosure Statement, the Debtor respectfully submits that the Disclosure Statement satisfies the requirements

---

[30] *See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 584 (Bankr. D. Del. 2012).
[31] *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991)

of section 1125 of the Bankruptcy Code. Thus, the Debtor respectfully requests that the Bankruptcy Court approve the Combined Disclosure Statement and Plan as containing adequate information in satisfaction of the requirements of section 1125 of the Bankruptcy Code.

### III.    The Assumption or Rejection of Executory Contracts and Unexpired Leases Under the Plan Should be Approved

77.    Section 1123(b)(2) of the Bankruptcy Code allows a chapter 11 plan to provide for the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases. Section 13.1 of the Combined Disclosure Statement and Plan provides that any executory contract or unexpired lease (excluding any Insurance Policies) that has not expired by its own terms on or prior to the Effective Date and that (i) the Debtor has not assumed and/or assigned or rejected with the approval of the Bankruptcy Court prior to the Effective Date, (ii) is not the subject of a motion to assume the same pending as of the Effective Date, or (iii) is not identified in the Schedule of Assumed Contracts shall be deemed rejected, pursuant to the Confirmation Order.

78.    Bankruptcy Code section 365(a) provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." Assumption or rejection of an executory contract or unexpired lease of a debtor is subject to judicial review under the business judgment standard.[32] This standard is satisfied when a debtor determines that assumption or rejection will benefit the estate.[33]

79.    The Debtor, in conjunction with the Plan Sponsor, has reviewed and analyzed its portfolio of executory contracts and unexpired leases. In the sound exercise of its business judgment, the Debtor has identified the executory contracts and unexpired leases it wants to assume on the Assumption and Cure Notice. The designated assumption of certain executory

---

[32]    *See e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989).

[33]    *See e.g., id.*

contracts and unexpired leases under the Combined Disclosure Statement and Plan is essential to the consummation of the RSA approved by the Court and will aid in implementation of the Combined Disclosure Statement and Plan. Therefore, such assumptions and rejections are in the best interests of the Debtor, its estate, and holders of claims and other parties in interest in the Chapter 11 Case.

80.     Furthermore, section 365(b)(1)(A) of the Bankruptcy Code requires that the Debtor promptly cure existing defaults under each executory contract and unexpired lease prior to or upon assumption. 11 U.S.C. § 365. On August 7, 2025, the Debtor filed and provided requisite notice of the Assumption and Cure Notice. The Assumption and Cure Notice listed a cure amount of $0 for each executory contract and unexpired lease listed on the Assumption and Cure Notice. No objections were filed to the Assumption and Cure Notice.

81.     Accordingly, the proposed assumptions and rejections should be approved in connection with confirmation of the Plan.

IV.     **The Plan Releases, Exculpation, and Injunctions Are Appropriate and Consistent with Established Precedent**

82.     The Combined Disclosure Statement and Plan includes certain customary release, exculpation, and injunction provisions. Plan, at §§ 16.1–16.4. These provisions are proper because, among other things, they are the product of arm's-length negotiations, have been important to obtaining the support of various constituencies and parties in interest, are supported by both the Debtor and the Supporting Parties, and have not been objected to by any parties in interest in this Chapter 11 Case. Such release, exculpation, and injunction provisions are an appropriate exercise of the Debtor's business judgment, are fair and equitable, given for valuable consideration, and in the best interests of the Debtor's Estate. Bertz Declaration, ¶ 45.  These provisions are consistent

with the Bankruptcy Code and, thus, the requirements of section 1123(b) of the Bankruptcy Code

are satisfied.

### A.    The Debtor Releases Should be Approved

83.    Section 16 of the Combined Disclosure Statement and Plan provides for releases

by the Debtor (the "Debtor Releases") in favor of certain third parties, the Released Parties.[34] These

claims—claims held by the debtor against third parties—are considered property of the estate and

therefore may be released in exchange for settlement.[35] In making the determination of whether a

release by the debtor is proper, bankruptcy courts may employ the "*Master Mortgage*" factors,

which looks to whether:

> (1) There is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate.
>
> (2) The non-debtor has contributed substantial assets to the reorganization.
>
> (3) The injunction is essential to reorganization. Without the it, there is little likelihood of success.
>
> (4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment.
>
> (5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.[36]

---

[34]    The Combined Disclosure Statement and Plan define Released Parties as: "collectively, (a) the Debtor and Reorganized Debtor; (b) the Plan Sponsor; (c) the Prepetition Lender; (d) the DIP Lender; and (e) the Related Persons of each of the foregoing Entities in clauses (a) through (d)."

[35]    *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville)*, 837 F.2d 89, 91-92 (2d Cir. 1988); *In re Coram Healthcare Corp.*, 315 B.R. 321, 334-35 (Bankr. D. Del. 2004).

[36]    *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999); *In re Kidde-Fenwal, Inc.*, No. , 2025 Bankr. LEXIS 1450, at *19, n. 23 (Bankr. D. Del. June 16, 2025) (noting the use of the *Master Mortgage* standard which has been used for debtor releases)

When evaluating a release of a claim of the estate, the release should be approved if it "is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[37]

84.     The proposed release by the Debtor of third parties is fully consistent with the *Master Mortgage* factors.

85.     <u>First</u>, an identity of interest exists among all released parties. This factor is satisfied when the debtor and released party share a common goal of achieving the successful reorganization of the debtor.[38] The Supporting Parties and the Debtor each share an interest in the successful confirmation of the Plan and reorganization of the Debtor. Without the release of the Supporting Parties by the Debtor, the Supporting Parties could be mired in uncertain litigation. As a result, without such releases the Plan Sponsor would not have been willing to provide the consideration in the amount under the Combined Disclosure Statement and Plan, the Prepetition Lender would not have been willing to waive its right to a distribution on account of its Allowed Prepetition Lender Secured Claim, and the DIP Lender would not have been willing to exercise its Subscription Option. Thus, without the Debtor Releases, the consideration for the Debtor's assets would have been lower and the Debtor's liabilities would have been higher, resulting in a reduced recovery for the Debtor's creditors and equity holders.

86.     <u>Second</u>, the Debtor Releases are predicated upon substantial contributions made by the Released Parties. The Released Parties played an invaluable role in negotiation of the RSA and formation of the Plan. The Plan Sponsor will provide the Consideration. The Released Parties have provided direct benefits to the Debtor's estate through diligently discharging their duties and

---

[37]   *U.S. Nat'l Bank Assoc. v. Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010).
[38]   *See e.g.*, *Zenith*, 241 B.R. at 110.

contributing to the overall success of the Chapter 11 Case. The Released Parties have also made various other contributions which led directly to the formulation of this Combined Disclosure Statement and Plan, the best possible outcome for the Chapter 11 Case and maximum recovery for creditors and equity holders.

87.　Third, the Debtor Releases are essential the Combined Disclosure Statement and Plan itself. Without the Debtor's release of the third parties, the Debtor does not believe that the manifest benefits arising under the Combined Disclosure Statement and Plan would be possible. As such the Debtor Releases are an essential part of the Consideration provided by the Released Parties.

88.　Fourth, no objections, either formal or informal, have been raised to the Debtor Releases. This demonstrates further support for the Debtor Releases.

89.　Fifth, the Combined Disclosure Statement and Plan provides for a full recovery to all holders of Allowed Claims and a material cash distribution to holders of Allowed Equity Interests. The alternative to the Combined Disclosure Statement and Plan, a chapter 7 liquidation, would lead to less favorable recoveries for all parties.

90.　For the foregoing reasons, the Debtor submits that *Master Mortgage* factors have been satisfied under the Combined Disclosure Statement and Plan. The Debtor Releases are the result of the exercise of the Debtor's sound business judgment, are fair and reasonable, and are in the best interests of all parties.

### B.　Exculpation and Limitation of Liability

91.　The Combined Disclosure Statement and Plan provides for the exculpation of, and limitation of liability for, the Exculpated Parties.[39] Combined Disclosure Statement and Plan, at

---

[39] "Exculpated Parties" is defined under the Combined Disclosure Statement and Plan as, "(i) Debtor, (ii) the Debtor's directors, officers, managers, and employees that served during the Chapter 11 Case, and (iii) each of

§ 16.2.  The exculpation and limitation of liability are subject to a standard carve-out for willful misconduct, fraud, or gross negligence. *Id.*.

92.     It is well established that exculpation is appropriate for fiduciaries of a bankruptcy estate, including the debtor, its directors, officers, and professionals.[40]  In the instant case, the Exculpated Parties have participated in good faith in formulating and negotiating the Plan, and they are entitled to protection from exposure to claims against them relating to their participation in this Chapter 11 Case, consistent with section 1125(e) of the Bankruptcy Code. Furthermore, interested parties received sufficient notice of the exculpation provision and had ample time to raise any objections thereto, and no objections were filed or otherwise remain unresolved. As a result, the exculpation provision of section 16.2 of the Combined Disclosure Statement and Plan is appropriate and should be approved.

### C.     Injunction

93.     Finally, section 16.4 of the Combined Disclosure Statement and Plan contains an injunction provision that the Supporting Parties believe is necessary to enforce and preserve the release and exculpation provisions provided for in the Combined Disclosure Statement and Plan and should, therefore, be approved. Therefore, to the extent the Bankruptcy Court finds the releases and exculpation provision are appropriate, the injunction is also appropriate and should be approved.

### V.     Modifications of the Combined Disclosure Statement and Plan Do Not Adversely Change the Treatment of Any Creditor or Equity Interest Holder

94.     Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of

---

their respective professionals and advisors retained during the Chapter 11 Case, each solely in their capacities as such."

[40]     *In re PWS Holding Corp.*, 228 F.3d 224, 245–47 (3d Cir. 2000).

sections 1122 and 1123 of the Bankruptcy Code. Further, when the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan. Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder.[41]

95.    Any proposed modifications to the Combined Disclosure Statement and Plan incorporated in the proposed Confirmation Order will not adversely change the treatment of any Claims against or Interests in the Debtor and should be approved.

## VI.    Waiver of Any Stay of the Confirmation is Appropriate

96.    The Debtor respectfully requests that, pursuant to Bankruptcy Rule 3020(e), the Court waive the 14-day stay of the Confirmation Order. Such a waiver is appropriate in these circumstances to permit the Plan Administrator to commence its duties as quickly as practicable, to promote a prompt distribution under the Combined Disclosure Statement and Plan and the Plan Administrator Agreement for the benefit of creditors and interest holders, and because a significant number of implementation activities are capable of being undertaken in short order. Therefore, the Debtor respectfully submits that good cause exists to support the waiver of the stay imposed by Bankruptcy Rule 3020(e).

*[Remainder of Page Intentionally Left Blank]*

---

[41]    *See, e.g., In re Global Safety Textiles Holdings LLC*, Case No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or re-solicitation); *In re Burns & Roe Enters., Inc.*, Case No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

## <u>CONCLUSION</u>

For the reasons set forth in this Memorandum, the Debtor (a) respectfully submits that the Combined Disclosure Statement and Plan fully satisfies all applicable requirements of the Bankruptcy Code and (b) requests that the Court enter an order confirming the Combined Disclosure Statement and Plan.

Dated: August 26, 2025        **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
James E. O'Neill (DE Bar No. 4042)
Debra I. Grassgreen (admitted *pro hac vice*)
Jason H. Rosell (admitted *pro hac vice*)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel: (302) 652-4100
Email: joneill@pszjlaw.com
      dgrassgreen@pszjlaw.com
      jrosell@pszjlaw.com

*Counsel to the Debtor*