**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MARIN SOFTWARE INCORPORATED,[1] | Case No. 25-11263 (LSS) |
| Debtor. | **Related Docket No. 111** |

**DECLARATION OF ROBERT BERTZ, CHIEF FINANCIAL OFFICER,**
**IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED COMBINED**
**DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION OF MARIN**
**SOFTWARE INCORPORATED UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Robert Bertz, pursuant to section 1726 of title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.     I am the Chief Financial Officer of the above-captioned debtor and debtor in possession, Marin Software Incorporated (the "Company" or "Debtor" or "Marin"), and have served in this capacity since December 2019. I received my Bachelor of Business Administration from The University of Texas at Austin in 1987 and have served as corporate controller, vice president of finance, or chief financial officer for various corporations for more than twenty years.

2.     In my capacity as Chief Financial Officer, I am familiar with the Debtor's business, financial affairs, and day-to-day operations. I also have been personally involved as part of the Debtor's team in formulating the Combined Disclosure Statement and Plan and exercising the Debtor's business judgment with respect thereto.

3.     I submit this Declaration in support of confirmation of the *Second Amended Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated*

---

[1]     The last four digits of the Debtor's federal tax identification number are 7180. The Debtor's address is 149 New Montgomery, 4th Floor, San Francisco, CA 94105.

*Under Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "Combined Plan and Disclosure Statement").[2]

4.      Except as otherwise noted, I have personal knowledge of the matters set forth herein. All facts set forth in this declaration (the "Declaration") are based on my personal knowledge; my discussions with other members of the Debtor's senior management, employees and other personnel, and the Debtor's counsel and other advisors; my review of relevant documents and information; and/or my opinion based on my experience and knowledge of the Debtor's operations and financial condition. In making the Declaration, I have relied in part on information and materials that the Debtor's personnel and advisors have gathered, prepared, verified, and provided to me, in each case under my ultimate supervision, at my direction, and/or for my benefit in preparing the Declaration. If I were called to testify as a witness in this matter, I could and would testify competently to the facts set forth herein.

5.      In the months before the Chapter 11 Case, the Board determined that it was in the best interests of shareholders to approve a voluntary dissolution and liquidation of the Company (the "Dissolution") pursuant to the Plan of Dissolution (but subject to the Company's ability to abandon or delay the Plan of Dissolution). The Plan of Dissolution proposed to liquidate the Company's assets, settle the Company's liabilities, and deregister Marin's common stock with the SEC. The Plan of Dissolution further provided that liquidating distributions would be made to the Debtor's stockholders and such distributions would be deemed to be in complete cancellation of all of the outstanding shares of capital stock of the Company as of the date the Company terminated its legal existence in accordance with section 278 of the Delaware General Corporation Law.

---

[2]   Capitalized terms not defined herein shall have the meanings ascribed in the Combined Disclosure Statement and Plan.

4930-2143-0370.3 54610.00002

6.　　On June 11, 2025, Marin held a special meeting of stockholders of Marin (the "Special Meeting") and held a vote to approve the Dissolution pursuant to the Plan of Dissolution, but subject to Marin's ability to abandon or delay the Plan of Dissolution in accordance with the terms thereof. Holders of common stock and the holder of the Series A Preferred Stock, collectively representing at least a majority of the outstanding voting power of Marin's capital stock, voted to approve the proposal, and the proposal passed. A copy of the Schedule 14A, Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 of Marin Software Incorporated, filed May 7, 2025, which includes the Plan of Dissolution (Appendix A) is attached hereto as **Exhibit A**.

7.　　One day after the Board approved the Plan of Dissolution, but before the Special Meeting, an affiliate of the Plan Sponsor contacted Marin. Marin then engaged in discussions with the Plan Sponsor concerning the sale of the Company to be effectuated through a pre-negotiated chapter 11 plan of reorganization. These discussions ultimately resulted in a restructuring support agreement that set forth principal terms of a comprehensive financial restructuring (the "Restructuring") of the Company.

8.　　The Debtor filed this case to implement the Restructuring of the Company and effectuate the sale of substantially all assets of the Company to the Plan Sponsor. Through a payment of the Plan Consideration (totaling $5.5 million) to the Plan Administrator by the Plan Sponsor, the Restructuring contemplates full payment of all Claims against the Debtor and a distribution of any remaining Cash to the holders of Interests. In consideration of the foregoing, (a) Reorganized Debtor New Equity will be issued to the Plan Sponsor and the DIP Lender, (b) any Claims of the Prepetition Lender against the Debtor will be waived, and (c) the going-concern value of the Debtor's business and operating assets will be preserved. This process was supported

4930-2143-0370.3 54610.00002

by key employees of the Debtor's management team and the Debtor's outside advisors, including

Pachulski Stang Ziehl & Jones LLP, Fenwick & West LLP, and Armanino Advisors LLC

("Armanino").

9.      On July 30, 2025, the Bankruptcy Court entered orders authorizing Marin to assume

the Restructuring Support Agreement it entered into with the Prepetition Lender, DIP Lender, and

Plan Sponsor [Docket No. 87] and conditionally approving the disclosures in the Disclosure

Statement and setting the Combined Hearing [Docket No. 88].

10.     The Debtor is now prepared to proceed to confirmation of the Combined Disclosure

Statement and Plan and to effectuate the Restructuring contemplated therein. I believe this

outcome maximizes recoveries for creditors and equity holders in this case.

## THE PLAN SATISFIES ALL REQUIREMENTS FOR CONFIRMATION

**A.      The Plan Complies with the Applicable Provisions of the Bankruptcy
Code as Required by Section 1129(a)(1) of the Bankruptcy Code**

11.     I believe, based on knowledge and advice from Debtor's restructuring legal

advisors, that the Combined Disclosure Statement and Plan complies with all applicable provisions

of the Bankruptcy Code, including sections 1122 and 1123.

**a.      The Plan Properly Classifies Claims and Interests as Required by
Sections 1122 and 1123(a)(1) of the Bankruptcy Code.**

12.     Section 9 of the Combined Disclosure Statement and Plan provides for the separate

classification of Claims and Interests as follows:

| Class | Designation |
|-------|-------------|
| 1 | Priority Non-Tax Claims |
| 2 | Prepetition Lenders Secured Claims |
| 3 | Other Secured Claims |
| 4 | Unsecured Claims |
| 5 | Interests |

13.     I believe that each Class of Claims or Interests, and each instance of separate classification of Claims or Interests, was based on a valid business, factual, and legal reason. Dissimilar Claims and Interests are not classified together under the Combined Disclosure Statement and Plan.

14.     The Combined Disclosure Statement and Plan separately classifies Claims (rights to payment) from Interests (representing ownership in the enterprise). Secured Claims are classified separately from unsecured Claims because the Debtor's obligations with respect to the former are secured by collateral. Based on the advice and guidance provided to me by the Debtor's restructuring legal advisors, I believe that this classification of Claims and Interests satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**b.      The Plan Specifies Unimpaired Classes and Provides the Same Treatment to Each Holder in a Particular Class as Required by Sections 1123(a)(2)-(4) of the Bankruptcy Code.**

15.     Section 8, Section 9, and various other provisions of the Combined Disclosure Statement and Plan provide for, among other things, a designation of appropriate Classes of Claims, and do not classify Administrative Claims, Professional Fee Claims, DIP Facility Claims, or Priority Tax Claims, and that the Combined Disclosure Statement and Plan specifies which Classes are Impaired and Unimpaired. Additionally, I believe that the Combined Disclosure Statement and Plan provides that unless the holder of a Claim agrees to a different treatment, that all holders of Claims within a Class of Claims receive the same treatment as each other holder within each such Class. As such, based on the advice and guidance provided to me by the Debtor's restructuring legal advisors, I believe that the Combined Disclosure Statement and Plan satisfies the requirements of sections 1123(a)(2) through (a)(4) of the Bankruptcy Code.

4930-2143-0370.3 54610.00002

### c. The Plan Provides for Adequate Means of Implementation as Required by Section 1123(a)(5) of the Bankruptcy Code.

16.     I believe that Section 14 and various other provisions of the Combined Disclosure Statement and Plan provide adequate means for the Combined Disclosure Statement and Plan's implementation, including the appointment of Armanino Advisory LLC as the Plan Administrator to liquidate and distribute the Excluded Assets, Available Cash, and Plan Consideration for the benefit of creditors and common stockholders.

### d. The Plan Prohibits the Issuance of Non-Voting Securities as Required by Section 1123(a)(6) of the Bankruptcy Code.

17.     I understand that the Combined Disclosure Statement and Plan prohibits the issuance of non-voting equity securities to the extent required by the Bankruptcy Code.

### e. The Plan Provides for the Selection of Directors and Officers as Required by Sections 1123(a)(7) of the Bankruptcy Code.

18.     I believe, based on knowledge and advice, that the provisions with respect to the manner of selection of any officer, director, or manager under the Combined Disclosure Statement and Plan, or successor thereof, are consistent with the interests of creditors, equity security holders, and public policy. Section 14 of the Combined Disclosure Statement and Plan describes the manner of selection and powers of the Plan Administrator. The identity of the Plan Administrator was disclosed in the Plan Supplement, along with Armanino's proposed compensation at its standard hourly rates:

| Representative | Rate |
|---|---|
| Partners | $495–$695 |
| Senior or Managing Directors | $440–$595 |
| Directors | $390–$495 |
| Managers | $250–$395 |
| Consultants and Staff | $195–$275 |

19.     As such, I believe that the Debtor has satisfied section 1123(a)(7) of the Bankruptcy Code.

4930-2143-0370.3 54610.00002

**f.    The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code.**

20.    It is my understanding that the Combined Disclosure Statement and Plan employs various provisions in accordance with the discretionary authority of section 1123(b) of the Bankruptcy Code. For example, the Combined Disclosure Statement and Plan designates all Classes of Claims and Interests as either Impaired or Unimpaired and specifies the treatment for each Class. The Combined Disclosure Statement and Plan also provides a structure for Claim allowance and disallowance under Section 12 and proposes appropriate treatment for executory contracts and unexpired leases under Section 13.

21.    Further, pursuant to Section 16, the Combined Disclosure Statement and Plan seeks to implement certain release, exculpation, and injunction provisions. I believe that these provisions:  (a) are the product of extensive good faith, arm's-length negotiations among the constituents; (b) are fair, equitable, reasonable and in the best interests of the Debtor's Estate; (c) do not release claims or liabilities arising from fraud, willful misconduct, or gross negligence; (d) are an essential means of implementing the Combined Disclosure Statement and Plan; (e) are an integral element of the transactions incorporated into the Combined Disclosure Statement and Plan; and (f) are important to the overall objectives of the Combined Disclosure Statement and Plan to finally resolve all Claims among or against the key parties in interest in the Chapter 11 Case with respect to the Debtor. Additionally, no party in interest has objected to the release, exculpation, and injunction provisions as set forth in the Combined Disclosure Statement and Plan. Moreover, the scope of the Released Parties and Exculpated Parties are narrowly tailored to the facts and circumstances of this Chapter 11 Case. It is my belief that the Debtor, the Released Parties, and Exculpated Parties have acted diligently and in good faith as evident from the facts and record of this Chapter 11 Case.

7

22.     Specifically, I believe that the exculpation provisions in Section 16.2 (the "Exculpation") are essential to the Combined Disclosure Statement and Plan and further believe that the Exculpation is appropriate and vital because it provides protection to those estate fiduciaries who served to further the Debtor's Chapter 11 Case. The Exculpation represents an integral piece of the overall terms of the Combined Disclosure Statement and Plan and was formulated following extensive, good faith, arm's-length negotiations with key constituents, and I believe it is appropriately limited in scope to achieve the overall purpose of the Combined Disclosure Statement and Plan, and based on knowledge and advice, consistent with applicable law. I believe each Exculpated Party made significant contributions to the Chapter 11 Case, including with respect to the negotiation and implementation of the transactions embodied in the Combined Disclosure Statement and Plan. In my opinion and based on my understanding of applicable laws, the Exculpated Parties have participated in good faith and in compliance with the applicable laws with regard to the distribution of notices and consideration pursuant to the Combined Disclosure Statement and Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing such distributions made pursuant to the Combined Disclosure Statement and Plan. The exculpation provisions do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a final order of a court of competent jurisdiction to have constituted gross negligence, fraud, or willful misconduct, which I am informed is consistent with established practice in this jurisdiction and others. I believe, based on knowledge and advice, that the protections afforded by the Exculpation are reasonable and appropriate.

23.     It is my understanding that all of the Debtor's key economic stakeholders support the Exculpation. The Debtor received no objections to the Exculpation from any economic

4930-2143-0370.3 54610.00002

stakeholder despite providing ample notice of its terms to all parties in interest, including by listing the entire Exculpation in the Confirmation Hearing Notice and the Notice of Non-Voting Status.

24.     I understand that Section 16.3 of the Combined Disclosure Statement and Plan provides for a release of certain Claims and Causes of Action of the Debtor and its Estate (the "Estate Releases"). I believe the Estate Releases are in the best interest of the Estate because: (a) the Debtor is not aware of the existence of any Claims or Causes of Action of material value being released by the Debtor under the Combined Disclosure Statement and Plan, and are expressly preserving certain other Claims and Causes of Action pursuant to the Combined Disclosure Statement and Plan and related provisions; and (b) the Combined Disclosure Statement and Plan, including the Estate Releases, was negotiated in good faith and at arm's-length by sophisticated entities that were represented by able advisors and that each conditioned their support for and acceptance of the Combined Disclosure Statement and Plan, among other things, on the grant of the Estate Releases.

25.     In addition to the above, I believe that the Released Parties: (a) made substantial and valuable contributions to the Debtor's Chapter 11 Case and the Estate, including through extensive negotiations with various stakeholders, and ensured the operation of the Debtor's business during the Chapter 11 Case; (b) attended and, in certain instances, participated in Court hearings; (c) as applicable, attended numerous board meetings related to the Chapter 11 Case and directed the negotiations that led to the Combined Disclosure Statement and Plan (as applicable); (d) invested significant time and effort in the preparation of the Combined Disclosure Statement and Plan, all supporting analyses, and the numerous other pleadings filed in the Chapter 11 Case, thereby ensuring the smoothest possible administration of the Chapter 11 Case.

26.    Further, I believe that the injunction provisions in Section 16.4 of the Combined Disclosure Statement and Plan (the "Injunction") are essential to the Combined Disclosure Statement and Plan because the Injunction enforces the Estate Releases and the Exculpation, which are centrally important to the Combined Disclosure Statement and Plan. The Injunction permanently enjoins all entities from commencing or maintaining an action on account of any Claims or Interests that are released or subject to exculpation pursuant to the Combined Disclosure Statement and Plan, and to facilitate the terms of the Combined Disclosure Statement and Plan and the efficient administration of and distributions from the Plan Administrator. To the extent that the Court finds that the Estate Releases and the Exculpation are appropriate, I believe that the Injunction also would be appropriate for the same reasons and as set forth herein.

### g.    The Principal Purpose of the Plan is Not the Avoidance of Taxes, Thereby Satisfying Section 1129(d) of the Bankruptcy Code.

27.    It is my understanding that a plan may not be confirmed if, upon request by a governmental unit, the Court finds that the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. First, it is my understanding that no governmental unit has made such request. And second, I believe that the principal purpose of the Combined Disclosure Statement and Plan is not for the avoidance of taxes or section 5 of the Securities Act of 1933, effectuate the proposed Restructuring and maximize value to the Estate. As such, I believe that the Combined Disclosure Statement and Plan satisfies section 1129(d) of the Bankruptcy Code.

### h.    The Plan was Solicited in Good Faith Within the Meaning of Section 1125(e) of the Bankruptcy Code.

28.    I believe that the Debtor and each of their officers, directors, employees, agents, advisors, accountants, attorneys, and representatives (in such capacities, as applicable), has acted in "good faith" in connection with all their respective activities relating to the formulation,

preparation, dissemination, negotiation, or filing of the Combined Disclosure Statement and Plan, the Plan Supplement, or any transaction related to the restructuring, any contract, instrument, release, or other agreement or document created or entered into during the Chapter 11 Case in connection with the Chapter 11 Case, the pursuit of confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, including, but not limited to, any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**B.     The Debtor Has Complied with the Provisions of the Bankruptcy Code, as Required under Section 1129(a)(2) of the Bankruptcy Code.**

29.     As stated at the beginning of the Declaration, I believe, based on knowledge and advice, that the Debtor, as the proponent of the Combined Disclosure Statement and Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1125 and 1126(b) of the Bankruptcy Code, for reasons similar to those provided above in Section A, above.

**C.     The Debtor Has Proposed the Plan in Good Faith in Compliance with Section 1129(a)(3) of the Bankruptcy Code.**

30.     I believe that the Combined Plan and Disclosure Statement was proposed in good faith, with the legitimate and honest purposes of maximizing the value of the Debtor's Estate for the benefit of all creditors and stakeholders. Specifically, the Combined Disclosure Statement and Plan was proposed in good faith in order to enable the Debtor to implement a pre-negotiated restructuring with the Plan Sponsor, preserve the going concern of the business, and maximize the value of the Debtor's Estate. Moreover, the Combined Disclosure Statement and Plan is the

4930-2143-0370.3 54610.00002

product of extensive arm's-length negotiations among various constituencies. As such, the

Combined Disclosure Statement and Plan satisfies the purposes of the Bankruptcy Code.

**D.      The Plan Provides that the Debtor's Payment of Professional Fees
and Expenses are Subject to Court Approval, as Required by
Section 1129(a)(4) of the Bankruptcy Code.**

31.      It is my understanding that the Debtor's Professional Fees are subject to Court

approval and the applicable requirements of the Bankruptcy Code.

**E.      The Debtor Has Disclosed All Necessary Information Regarding
Directors, Officers and Insiders in Compliance with
Section 1129(a)(5) of the Bankruptcy Code.**

32.      As set forth in the Plan Supplement and the Combined Disclosure Statement and

Plan (as applicable), the Debtor has complied with section 1129(a)(5) by providing the identity

and proposed compensation of Armanino as the proposed Plan Administrator. I believe that the

appointment of the Plan Administrator is "consistent with the interests of creditors and equity

security holders and with public policy," and no party in interest has objected to the Combined

Disclosure Statement and Plan on these grounds. Based on the foregoing, I believe that the Debtor

has satisfied section 1129(a)(5) of the Bankruptcy Code.

**F.      The Plan Does Not Require Governmental Regulatory
Approval Required by Section 1129(a)(6) of the Bankruptcy Code.**

33.      I am informed by the Debtor's restructuring legal counsel that any governmental

regulatory approval of the Combined Disclosure Statement and Plan with respect to any rate

changes is not required. Section 1129(a)(6) of the Bankruptcy Code is therefore inapplicable.

**G.      Section 1129(a)(7) of the Bankruptcy Code Is Inapplicable.**

34.      I am informed by the Debtor's restructuring legal counsel that the "best interest of

the creditors test" only applies to non-accepting holders of claims and equity interests, and

therefore, section 1129(a)(7) of the Bankruptcy Code is inapplicable.

4930-2143-0370.3 54610.00002

**H.      The Plan is Confirmable Because All Classes of Claims and Interests Accepted the Plan as Required by Section 1129(a)(8) of the Bankruptcy Code.**

35.      All Holders of Claims and Interests are Unimpaired under the Combined Disclosure Statement and Plan. It is my understanding that this means that all Classes of Claims and Interests have accepted the Combined Disclosure Statement and Plan.

**I.      The Plan Provides for Appropriate Treatment of Claims Under Section 1129(a)(9) of the Bankruptcy Code.**

36.      It is my understanding that the Combined Disclosure Statement and Plan, under Section 8, provides for appropriate treatment of Administrative Claims, DIP Facility Claims and Priority Tax Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code, as those Claims are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code.

**J.      Section 1129(a)(10) of the Bankruptcy Is Inapplicable.**

37.      It is my understanding that section 1129(a)(10) of the Bankruptcy Code is satisfied if at least one class of impaired claims votes to accept the Combined Disclosure Statement and Plan, and there are no impaired Classes of Claims. Therefore, section 1129(a)(10) of the Bankruptcy Code is inapplicable.

**K.      The Plan is Feasible Under Section 1129(a)(11) of the Bankruptcy Code.**

38.      I believe that the Combined Disclosure Statement and Plan is feasible. The Debtor has analyzed the ability of the Plan Sponsor and the Plan Administrator to meet their respective obligations under the Combined Disclosure Statement and Plan.  Specifically, the Plan Administrator will have access to the Excluded Assets, the Remaining Cash, and the Plan Consideration, which the Debtor projects will be sufficient for the Plan Administrator to fulfill its obligations under the Plan.

39.    Additionally, I have been informed that the Plan Sponsor is committed to a successful reorganization of the Debtor. I have learned that the Plan Sponsor is in the business of acquiring and strengthening software companies, including companies in similar areas of business as the Debtor, and that the acquisition of the Reorganized Debtor fits within the Plan Sponsor's strategic plan, namely to operate and continue the business. I have also been informed that the Plan Sponsor believes that under its management, the Reorganized Debtor will enhance its relationships with its customers, while leveraging its platform to drive efficiency and profitability. It is my understanding that the Plan Sponsor possesses sufficient liquidity to consummate the Combined Disclosure Statement and Plan and invest in the success of the Reorganized Debtor, and believes that it will be able to leverage its relationships, expertise, and know-how to help the Reorganized Debtor thrive.

40.    Thus, I believe that the Combined Disclosure Statement and Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

**L.    The Plan Provides for the Payment of U.S. Trustee Fees
as Required Under Section 1129(a)(12) of the Bankruptcy Code.**

41.    I understand that Section 19.1 of the Combined Disclosure Statement and Plan provides for the payment of U.S. Trustee fees payable by the Debtor, the Reorganized Debtor, or the Plan Administrator. As such, I believe that section 1129(a)(12) of the Bankruptcy Code is satisfied.

**M.    Sections 1129(a)(13)-(16) of the Bankruptcy Code are Not Applicable.**

42.    I believe that sections 1129(a)(13), (14), (15), and (16) of the Bankruptcy Code are not applicable because the Debtor is not liable for any "retiree benefits," as such term is defined in section 1114 of the Bankruptcy Code, owes no domestic support obligations, is not an individual, and is not a nonprofit corporation.

4930-2143-0370.3 54610.00002

**N.    The Assumption or Rejection of Executory Contracts and
Unexpired Leases Under the Plan Should be Approved.**

43.    Section 13 of the Combined Disclosure Statement and Plan provides for the rejection and assumption of executory contracts and unexpired leases. The Debtor, in conjunction with the Plan Sponsor, has reviewed and analyzed its portfolio of executory contracts and unexpired leases. In the sound exercise of its business judgment, the Debtor has identified the executory contracts and unexpired leases it wants to assume on the Assumption and Cure Notice.

44.    I believe that the designated assumption of certain executory contracts and unexpired leases under the Combined Disclosure Statement and Plan is essential to the consummation of the RSA approved by the Court and will aid in implementation of the Combined Disclosure Statement and Plan. Therefore, I believe that such assumptions and rejections are in the best interests of the Debtor, its estate, and holders of claims and other parties in interest in the Chapter 11 Case

**O.    The Plan Releases, Exculpation, and Injunctions Are Appropriate
and Consistent with Established Precedent.**

45.    As discussed earlier, I believe that the Estate Releases, Exculpation, and Injunction provisions in Section 16 of the Combined Disclosure Statement and Plan:  (a) are the product of extensive good faith, arm's-length negotiations among the constituents; (b) are fair, equitable, reasonable and in the best interests of the Debtor's Estate; (c) do not release claims or liabilities arising from fraud, willful misconduct, or gross negligence; (d) are an essential means of implementing the Combined Disclosure Statement and Plan; (e) are an integral element of the transactions incorporated into the Combined Disclosure Statement and Plan; and (f) are important to the overall objectives of the Combined Disclosure Statement and Plan to finally resolve all Claims among or against the key parties in interest in the Chapter 11 Case with respect to the Debtor. At bottom, I believe such release, exculpation, and injunction provisions are an appropriate

15

exercise of the Debtor's business judgment, are fair and equitable, given for valuable consideration, and in the best interests of the Debtor's Estate.

**P.      Modifications of the Combined Disclosure Statement and Plan Do Not Adversely Change the Treatment of Any Creditor or Equity Interest Holder.**

46.      I believe that any proposed modifications to the Combined Disclosure Statement and Plan, including in the *Second Amended Combined Disclosure Statement and Plan of Reorganization of Marin Software Incorporated Under Chapter 11 of the Bankruptcy Code*, or incorporated in the proposed Confirmation Order will not adversely change the treatment of any Claims against or Interests in the Debtor and should be approved.

**Q.      Waiver of Stay of the Confirmation Order**

47.      I believe that the Debtor has undertaken great efforts to facilitate its exit from chapter 11 as soon as practicable. I believe that each day the Debtor remains in chapter 11 it incurs significant professional and administrative costs to the detriment of its Estate. I believe that cause exists for waiving the stay of the entry of the Confirmation Order such that the Confirmation Order will be effective immediately upon its entry.

48.      Accordingly, for all the reasons set forth above, I believe that the Combined Plan and Disclosure Statement satisfies all of the applicable requirements of the Bankruptcy Code and should be confirmed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 26, 2025          */s/ Robert Bertz*
                                 Robert Bertz
                                 Chief Financial Officer

16

4930-2143-0370.3 54610.00002